**In re Jonathan Kimball KEYWORTH and Kerry Jane Keyworth, Debtors.**

**Bankruptcy No. 84 B 02654 J.**

United States District Court,
D. Colorado.

March 12, 1985.

Carl A. Eklund, John E. Maas, Roath & Brega, P.C., Denver, Colo., for debtors.

Paul G. Quinn, Denver, Colo., for Trustee.

Robert N. Miller, U.S. Atty., and Stephen D. Taylor Asst. U.S. Atty., Denver, Colo., for U.S.

Garry R. Appel, Rothgerber, Appel & Powers, Denver, Colo., for Merck & Co.

### MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

On or about February 24, 1982, the Debtors filed an Amended Complaint in the District Court in and for the City and County of Denver, Colorado, Civil Action No. 82–CV–1490, against approximately twenty-five (25) firms who allegedly formulated, manufactured and sold synthetic estrogen compounds of stilbene derivatives under various brand names. In that suit, the Debtors set forth seven (7) claims:

1. Negligence resulting in personal injuries to Kerry Keyworth ($1.5 million).

2. Strict products liability for which Defendants should be liable for personal injuries to Kerry Keyworth ($1.5 million).

3. Misrepresentation by Defendants resulting in personal injuries to Kerry Keyworth ($1.5 million).

4. Breach of warranties by Defendants resulting in personal injuries to Kerry Keyworth ($1.5 million).

5. Loss of consortium by Jon Keyworth ($500,000.00).

6. Wrongful death of Scott Keyworth, the son of Jon and Kerry Keyworth, for which the Debtors, as survivors, seek actual medical damages and the statutory sum of $45,000.00 under the Colorado wrongful death statute (Medical expenses plus $45,000.00).

7. Punitive damages for the willful, wanton and reckless disregard exhibited by Defendants ($5 million).

In April, 1984, Jon Keyworth met with Steven L. Zimmerman, a Denver attorney, to seek counsel regarding a potential bankruptcy by the Keyworths. For this consultation, Mr. Zimmerman billed Mr. Keyworth $75.00.

Subsequently, the Keyworths retained different counsel and on June 1, 1984, they filed their Chapter 7 Petition herein. On their Schedule B-2, Personal Property, the Debtors, under paragraph (g) stated "Personal Injury Suit: Denver Dist. Ct. 82–CV–1490, $7,145,000.00." On their Schedule B-4, Property Claimed as Exempt, the Debtors stated "Proceeds of Claims for Personal Injury—Denver Dist. Ct. 13–54–102(n)—100% Except Obligations Incurred for Treatment or Collection." In their Statement of Financial Affairs for Debtor Not Engaged in Business, under paragraph 10.a.(1), the Debtors stated "Denver District Court, State of Colorado, Civil Action 82–CV–1490, Courtroom 14; Kerry Keyworth & Jon Keyworth vs. Eli Lilly & Co., *et al.;* Personal Injury Suit."

On August 21, 1984, a meeting of creditors was held pursuant to 11 U.S.C. § 341. The Trustee, Karen Radakovich, presided over that meeting. After questioning the Debtors about litigation captioned *United Bank of Littleton v. Jon Keyworth Beverages, Inc.*, the Trustee requested the Keyworths to furnish copies of the pleadings in that case. The Trustee then inquired into the suit against the drug manufacturers, 82–CV–1490. She inquired as to the name of the attorney prosecuting the suit, when trial was scheduled, and how much the medical damages were. She did not inquire as to the substantive nature of the suit, or the legal grounds upon which the Debtors were relying. Nor did she request to see copies of the pleadings.

On September 7, 1984, Merck & Company, obtained for $50.00 an Assignment of Unsecured Claim from attorney Zimmerman and on September 12, 1984, Merck & Company filed its Proof of Claim, its Objec-

tion to Debtors' Claim of Exempt Property and a statement Pursuant to Rule 3001(e), and the Assignment of Unsecured Claim. The Court set October 29, 1984, for hearing of this objection.

On October 24, 1984, the Debtors and Merck & Company filed a Stipulation attached hereto and incorporated herein as Appendix I. Three days prior to the scheduled hearing, Merck & Company filed notice that the objection it filed drew into question the constitutionality of 11 U.S.C. § 522(b)(1). The hearing on October 29, 1984, was short. The Trustee orally moved to intervene for the purpose of joining in the objection filed by Merck & Company. The Court granted that motion but only allowed the Trustee to join with Merck & Company on the same issues because the last day to file objections to claimed exemptions had expired September 20, 1984, in accordance with Bankruptcy Rule 4003(b).

On October 30, 1984, the Court under 28 U.S.C. § 2403, notified the Attorney General for the United States, the U.S. Attorney for the District of Colorado, and the Attorney General of the State of Colorado that the constitutionality of 11 U.S.C. § 522(b)(1) and of §§ 13–54–102(n) and 13–54–107, C.R.S. 1973, had been drawn into question, and gave those persons until November 30, 1984, to intervene. The Court also set forth a briefing schedule and set January 11, 1985, for an evidentiary hearing and oral argument on Merck & Company's Objection.

### STANDING OF TRUSTEE

On January 10, 1985, the Trustee filed Trustee's Objection to Debtors' Claim of Exempt Property and for Clarification of the Court's Order wherein she asserts she objected "timely" to the claim of exemption and has separate grounds to object independent of Merck & Company. The Trustee's theory is that because of the manner in which the Debtors completed their schedules and the way in which they responded at the § 341 hearing, she could not have reasonably known that portions of the state court lawsuit were not within the

allowable exemptions, and she timely filed her objection within thirty (30) days of obtaining such information. The Court disagrees with this theory. Rule 4003(b) provides that any objection may be filed within thirty (30) days after the conclusion of the § 341 meeting, not within thirty (30) days of discovering facts forming a basis for the objection. Even if the Court were to grant an exception to Rule 4003(b) to provide that objections could be filed within thirty (30) days of such discovery if the facts were intentionally concealed by the Debtors (which the Court is not willing to do at this time), the Trustee's theory is of no aid here. There was no evidence, or even an assertion, that the Debtors either deliberately or negligently concealed the facts from the Trustee or any creditors. The Debtors answered each question at the § 341 meeting and disclosed the state court suit in their schedules. If the Trustee desired more information all she had to do was ask, or indeed, require the Debtors to furnish a copy of the pleadings in that suit. She did neither.

Therefore, the Court finds that the Trustee has no independent standing to object to the claimed exemptions, but rather that she was allowed only to join in the objection of Merck & Company. To hold otherwise would be to impermissably amend Rule 4003(b) which is clear and unequivocal.

## STANDING OF MERCK & COMPANY

As shown by the attached Stipulations, Merck, Sharpe & Dohme is a defendant in the subject state court suit and is a division and subsidiary of Merck & Company, the objecting creditor here. (For purposes of this opinion both of these entities will be referred to as "Merck"). Merck is in the business of "discovering, developing, producing and marketing products and services for the maintenance or restoration of health and the environment". It is not the business of Merck to collect debts owed to parties not otherwise related to Merck. The parties have stipulated that on the date of the claim assignment from Mr. Zimmerman to Merck, that Mr. Zimmerman was the "attorney for the Debtor, Jon Keyworth". Appendix I, ¶ 5.

Debtors argue that the assignment of the claim to Merck or the claim itself should be disallowed or voided because Mr. Zimmerman violated the attorney client relationship by making the assignment. Mr. Zimmerman was not a party to this proceeding. It would be improper for this Court to rule that he acted improperly or in violation of his ethical duties when he is not present to counter such allegations. Even so, the facts set forth *infra* are insufficient for the Court to void the assignment or disallow the claim based on Mr. Zimmerman's actions.

The actions of Merck, however, present a different situation. Merck asserts that its only purpose in buying Mr. Zimmerman's claim was to resolve any doubt with respect to the real party or parties in interest in the state court litigation. Merck's argument is that some or all of the proceeds of that litigation may be property of the estate if its objections to the claimed exemptions are upheld, and, in that event, the Trustee is the real party in interest. Merck argues that the Bankruptcy Court is the "obvious forum" for the resolution of this issue. This Court finds such an argument to be specious.

This Court has no jurisdiction or authority to determine who is or is not a proper party in a suit pending before another court. Merck admits that it could have filed a motion under Rules 17 or 19, C.R.Civ.P., with the state court to raise the issues of indispensable party or real party in interest. Indeed, such a motion will still have to be filed regardless of this Court's determination of the issues herein.

This Court is not the "obvious forum" for determination of such issues, and courts other than bankruptcy courts have decided such issues many times. In fact, the three cases cited by Merck for the position that the Trustee is the real party in interest were from non-bankruptcy courts, to-wit: *Burkett v. Shell Oil Co.*, 448 F.2d 59 (5th Cir.1971), (anti-trust

claim); *Crook v. Prudential Ins. Co. of America,* 34 F.Supp. 239, (W.D.Ky.1940), (claim for pre-petition disability benefits under an insurance policy); and *Hermsmeyer v. A.L.D., Inc.,* 239 F.Supp. 740, (Colo.1964), (fraud and breach of contract claims).

■ Merck also argues that no party has followed the procedures of Bankruptcy Rule 3007, to properly object to Merck's claim. The Court disagrees. Rule 3007 requires an objection to a claim of a creditor be in writing, filed with the Court, and copies thereof delivered to the Trustee and the claimant. The Debtors did follow that procedure when they filed their "Memorandum Brief in Response to Claimant's Objection to Debtors' Claim of Exempt Property" on October 25, 1984. Pages 12 through 19 of that Brief clearly set forth the Debtors' objection to Merck's claim.

The Debtors assert that the purchase of Mr. Zimmerman's claim by Merck violates equitable principles and amounts to a purchase of this Court's jurisdiction for an ulterior motive.

■ The Bankruptcy Court has long been recognized as a court of equity. Although this Court should not use its equitable powers to defeat legal rights, it can, and must, use such powers to further justice and protect its own integrity.

■ Merck asserts that no evidence has been presented to show that it acted improperly, or in bad faith, or that it acted with an improper motive or ulterior purpose. This Court, again, disagrees. Merck is a defendant in a state court suit with a potential liability of over $7 million to the Debtors. It learns of the Debtors' bankruptcy and purchases a $75.00 claim for $50.00 and immediately files an objection to the Debtors' claimed exemption to the proceeds of that lawsuit. It is not in the business of purchasing and collecting such claims. It has no other stake in the bankruptcy proceeding. Its avowed purpose, as stated *supra,* text at 970, is incredible. When the Debtors attempted, through proper discovery, to learn the facts surrounding Merck's purchase of the claim they were met with frustration—Merck asserted an attorney-client privilege (which they are entitled to assert) and refused to disclose discussions between Merck's internal counsel and their attorney herein. See Appendix II, ¶ 1.

From these facts the Court can draw logical inferences, and in doing so it cannot close its eyes to the real world. One asks, "Why did Merck buy this $50.00 claim and object to the Keyworths' claimed exemption?" There must have been some reason, and it is only logical to infer that Merck saw some benefit for itself. Prior to purchasing the claim, it had no interest whatsoever in this bankruptcy. This Court rejects any idea that Merck, of its own spirit of public service, would enter this case solely to clarify any unsettled principles of bankruptcy law or to benefit the unsecured creditors. As the Court previously stated, Merck's stated purpose is found to be incredible.

Faced with these facts, this Court is of the opinion that Merck is simply harassing the Keyworths or they seek some subtle advantage in the state court litigation such as substituting the Trustee as party plaintiff who may be a less intractable opponent, or Merck is simply trying to lessen the incentive of the Keyworths' to prosecute their suit with the ferver so necessary in our adversarial system. Whatever the reason, this Court cannot fathom any purpose justifying Merck's actions.

The Court is thus presented with a conflict between two strong public policies: (1) the maintenance of the integrity of this country's judicial system; and (2) the execution of the spirit and intent of the Bankruptcy Code. If the Court were to allow Merck standing to pursue its objection under these circumstances, it would be to allow parties to manipulate one court in order to gain an advantage in another court—to let some courts become pawns of the attorneys in their tactics for trial in another court. Conversely, if standing to Merck is allowed, difficult, unanswered questions under the Bankruptcy Code can

be answered and the assets of this estate can be distributed to the Debtors and to their creditors according to law. To this Court, no problem exists in deciding between these two policies. The courts of this country, and indeed the entire legal profession, are held in disdain by a great number of Americans. If we are to remain a nation governed by laws rather than men, the integrity of the system and our citizens' trust in that system must be zealously guarded.

The actions of Merck are not condoned by this Court and accordingly, the Court will not lend its aid to Merck. This Court was created to handle bankruptcy matters and its broad jurisdiction should not be used to manipulate actions now pending in, and best handled by state courts. Even though Merck is here legally possessed of a claim and therefore legally entitled to object to the Keyworths' claims of exempt property, this Court finds that said claim must be disallowed and accordingly, that Merck has no standing to raise its objection as a creditor of this estate. Likewise, under these circumstances, the Court also finds that Merck is not a "party in interest" entitled to object under 11 U.S.C. § 522(*l*).

Having previously decided that the Trustee has no standing, independent of Merck, the Trustee likewise has no standing to object under § 522(*l*) because her objection was untimely. Therefore, there are no timely objections to the Keyworths' claimed exemptions and they must be allowed.

## PROPRIETY OF DEBTORS' CLAIMED EXEMPTIONS

Although these findings are dispositive of the matter pending before the Court, the crucial significance of the issues raised by Merck should be addressed because of their relevance and the likelihood of recurrence in bankruptcy cases.

The question is one of interpretation of the term "personal injuries" under § 13–54–102(1)(n), C.R.S.1973 (1984 Supp.). No one argues that the term includes at least *bodily* injuries suffered by a debtor. But it also includes something more. *In Colorado Jury Instructions 2d—Civil*, Instruction 6.1 entitled "Personal Injuries—Adults", we find in determining damages for personal injuries, the jury is instructed to consider "... the nature and extent of the injuries, any loss of earnings or impairment of earning capacity incurred before trial, any physical or mental pain and suffering endured before trial ..." and any reasonable and necessary medical or other expenses occasioned by such injuries. The jury is further instructed to consider whether the injured party "... will probably endure or incur, in the future, physical or mental pain and suffering, medical expenses, permanent injuries or disability or loss of earnings or impairment of earning capacity ...".

It should be noted that counsel have cited numerous cases interpreting the term "personal injury" under the Colorado Workmen's Compensation Act, § 8–40–101, *et seq.* C.R.S.1973. Such cases are not persuasive in the present inquiry. The courts, when interpreting said Act have narrowly construed the term "personal injury" in order to effect the legislative intent of that statute. Conversely, the exemption statute must be liberally construed in order to give full effect to the legislative intent of providing a "fresh start". *In re Janesofsky*, 22 B.R. 973 (Bankr.Colo.1982); *Ranes v. Molen*, 31 B.R. 70 (Bankr.Colo. 1983).

Jury instruction 6.1 is derived from numerous Colorado state court decisions pre-dating Colorado's "opt out". It must be presumed that the state legislature was aware of the existing law when it exempted the "proceeds of any claim for damages for personal injuries". Thus, any recovery made by the Debtors on their First and Second Claims in the state court action are exempt, except those proceeds recovered "for obligations incurred for treatment of any kind for such injuries or collection of such damages."

The Debtors' Third Claim in state court is based on a theory of misrepresentation, and their Fourth Claim is on a theory of breach of warranties. In both those claims, they allege the same physical and mental damages alleged to have been occasioned upon Kerry Keyworth as they did in the First and Second Claims under negligence and strict liability theories. Colorado law in § 13–21–101, C.R.S.1973 (1984 Supp.), provides that in all actions brought to recover damages for "personal injuries" sustained by a person, the injured party may also recover interest.

In *Denver Horse Importing Co. v. Schafer*, 58 Colo. 376, 147 P. 367 (1915), the Court held that interest was not recoverable in an action for breach of warranty. Several cases have held that interest is not recoverable in actions for fraud, deceit, and false representations. *See Keeney v. Angell*, 92 Colo. 213, 19 P.2d 215 (1933); *Moreland v. Austin*, 138 Colo. 78, 330 P.2d 136 (1958); and *Holland Furnace Co. v. Robson*, 157 Colo. 347, 402 P.2d 628 (1965). However, in each of those cases the injury was not to the person, but was related to solely pecuniary or property rights. This Court has no doubt that when Colorado courts are presented with the issue of injuries to the person which result from breach of warranty, fraud, deceit, or false representations, under § 13–21–101 C.R.S.1973 (1984 Supp.), they will hold that indeed they are "personal injuries". In *Miller v. Carnation Co.*, 39 Colo.App. 1, 564 P.2d 127 (1977), the court held that an injury is personal when it impairs the well-being or the mental or physical health of the victim. Thus, this Court finds that, like the First and Second Claims, the Debtors' Third and Fourth Claims are likewise exempt.

The Debtors' Fifth Claim in state court is for loss of consortium by Jon Keyworth. "Consortium consists of all the rights arising out of a marital relationship each spouse has to the person, affection, society, companionship, household services, aid and comfort of the other spouse. A husband or a wife has the same right to recover for loss of consortium" *Colorado Jury Instructions 2d—Civil*, Instruction 6.7.

Merck argues that a claim for loss of consortium is action to recover for injury to a property right versus a personal injury. This country has long ago abandoned the notion that a man's wife is his chattel. Even if there were no Colorado cases deciding whether a claim for loss of consortium was a claim for personal injury rather than injury to property, this Court would so hold. However, Colorado recognized this to be a personal injury as far back as 1939. *See American Insurance Co. v. Naylor*, 103 Colo. 461, 87 P.2d 260 (1939). It reaffirmed that proposition in *dicta* in *Miller, supra* when it was interpreting § 13–21–201, C.R.S.1973. "For example, a claim for loss of consortium is a personal injury within the meaning of the materially identical precursor to § 13–21–101, C.R.S.1973." *Miller, supra*, 39 Colo. App. at 7, 564 P.2d 127. This Court finds the Debtors' Fifth Claim is likewise exempt.

The Debtors' Sixth Claim is brought under the wrongful death act, § 13–21–201, *et seq.*, C.R.S.1973, for the death of the Debtors' infant son. Such an action is purely statutory, enacted in aid of, and not in derogation of common law. *Hindry v. Holt*, 24 Colo. 464, 51 P. 1002 (1897); *Taylor v. Welle*, 143 Colo. 37, 352 P.2d 106 (1960); *Hayes v. Williams*, 17 Colo. 465, 30 P. 352 (1892). The proceeds of a judgment under this statute are owned by and are to be divided among the decedent's heirs without regard to whether or not a particular heir suffered damages. However, §§ 13–21–201 and 203, C.R.S. 1973, specify that if the deceased is a minor, all damages shall be sued for by the father and mother, each of which have an equal interest in the judgment. The statute contains a limitation on the amount of damages that may be recovered. At the present time (other than for medical, hospital and related expenses) the limit is $45,-000.00. There is pending in the state legislature Senate Bill 65 which would raise that limit to $100,000.00. As passed by the

Colorado Senate, this new limit would apply only to causes of action occuring on or after July 1, 1985.

Case law in Colorado is clear that only the net pecuniary loss suffered by the Plaintiffs is to be considered in this $45,000.00 figure. This "net pecuniary loss" rule limits the Plaintiffs' damages to the financial benefit, if any, which they might reasonably have expected to receive from the decedent had he lived. *Espinoza v. O'Dell*, 633 P.2d 455 (Colo.1981), *dismissed for want of jurisdiction*, 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982). There is no recovery permitted at this time for grief, loss of comfort and society and other general damages. *Niven v. Falkenburg*, 553 F.Supp. 1021 (D.Colo.1983). The pending legislation would also change this rule by providing that "net pecuniary loss" would include companionship of a spouse, parent or child and anguish of the surviving parties.

Again, Merck and the Trustee argue that this is not a "personal injury" of the Debtors, but an injury to property of the Debtors. As the Colorado Supreme Court stated in *Fish v. Liley*, 120 Colo. 156, at 163, 208 P.2d 930 (1949):

If, since the death was caused by injuries inflicted through negligence, a tort action terminology must be employed in describing the nature of plaintiff's action, it can be classified as a property tort action and cannot be classified as a tort action "for injuries done to the person." *Prouty v. Chicago*, 250 Ill. 222, 95 N.E. 147.

Debtors argue that since this claim can only be brought by them and cannot be assigned to any other person, it must therefore be a "personal injury". But this argument ignores the plain language of the state exemption statute. § 13–54–102(1)(n), C.R.S.1973 (1984 Supp.), exempts only the proceeds of any claim for damages for *personal injuries suffered by the debtors*. It does not exempt the proceeds of any *claim personal to the debtors*. Accordingly, under the present state of the law in Colorado, this Court would hold that proceeds of a claim for damages received by a debtor under the wrongful death act are not exempt under § 13–54–102(1)(n), C.R.S.1973 (1984 Supp.).

The Debtors' Seventh Claim in state court is for exemplary damages under § 13–21–102, C.R.S.1973, which provides:

In all civil actions in which damages are assessed by a jury for a wrong done to the person, or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.

In Colorado such exemplary, or punitive, damages may not be awarded absent an award of actual damages. *Defeyter v. Riley*, 671 P.2d 995 (Colo.App.1983). In their Complaint, the Debtors have limited their claim for exemplary damages to their "personal injury" claims and not for their wrongful death claim, and appropriately so because such damages are not recoverable in a wrongful death action. *Mangus v. Miller*, 35 Colo.App. 335, 535 P.2d 219 (1975).

No one disputes that the purpose of punitive damages is to punish and deter the wrongdoer and not to compensate the victim. *Beebe v. Pierce*, 185 Colo. 34, 521 P.2d 1263 (1974); *Mince v. Butters*, 200 Colo. 501, 616 P.2d 127 (1980).

A claim for punitive damages in Colorado is not an independent cause of action, but is dependent upon the underlying claim for actual or compensatory damages. *Dorney v. Harris*, 482 F.Supp. 323 (D.Colo.1980).

The purpose of the Bankruptcy Code, and the Colorado exemption statutes, are to provide the debtor with a "fresh start". That "fresh start" includes a discharge of debts, "... the tools of his trade or profession, some minimal food and clothing, the means to provide shelter for he

and his family, and some household goods." *In re Parrish,* 19 B.R. 331 at 335 (Bankr. Colo.1982).

There is another purpose of the Bankruptcy Code, and that is to distribute the assets of the debtor not needed for his "fresh start" to his creditors. This is the *quid pro quo* for his discharge.

The purpose of the punitive damage statute can be fulfilled whether those damages are exempt or not.

However, if these damages are declared to be exempt, the debtor will obtain a windfall in detriment to his creditors which is not contemplated by either the Bankruptcy Code or Colorado law. The debtor, before any entitlement to punitive damages accrues, will have been made whole for his injuries by an award of compensatory damages. He does not need the punitive damages for either recompense or his fresh start.

In addition, § 13–54–102(1)(n) C.R. S.1973 (1984 Supp.) exempts "the proceeds of any claim for damages for personal injury". Punitive damages are not awarded *because of personal injury,* they are assessed against a defendant because of his malicious, wanton and reckless actions.

Therefore, to further the fundamental purposes of the statutes and under a fair reading of those statutes, this Court would hold that proceeds received by a debtor under the Colorado exemplary damages law are not exempt under § 13–54–102(1)(n) C.R.S.1973 (1984 Supp.).

## CONSTITUTIONAL CONSIDERATIONS

This Court was called upon to rule on the constitutionality of Colorado's "opt out" statute, § 13–54–107, C.R.S.1973, *In re Parrish,* 19 B.R. 331 (Bankr.Colo.1982). In that case, the Court found no constitutional deficiencies. That statute, along with 11 U.S.C. § 522(b)(1), which permits the states to "opt out" of the federal exemption scheme, is again under attack because the Debtors here have claimed as exempt

The proceeds of any claim for damages for personal injuries suffered by the

debtor except for obligations incurred for treatment of any kind for such injuries or collection of such damages. § 13–54–102(1)(n), C.R.S.1973 (1984 Supp.).

Had Colorado not elected to "opt out", the Debtors would be limited in their claim of exemptions to

... a payment, not to exceed $7,500.00 on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent ... 11 U.S.C. § 522(d)(11)(D).

Merck argues that if the exemptions allowed by a given state law show a "substantial departure" from those allowed by federal law, then the "opt out" and the state exemption laws are unconstitutional. That is not the test. Congress, can, and did, give the states wide latitude to provide their citizens with a scheme of exemptions, not inconsistent with those of the Bankruptcy Code, that will give debtors a "fresh start". As this Court noted in the *Parrish* case, Colorado's scheme is not identical to the federal scheme, and it need not be in order to pass constitutional muster. This concurrent legislative authority has been upheld in several courts of appeal, *e.g., In re Morgan,* 689 F.2d 471 (4th Cir.1982); *In re McManus,* 681 F.2d 353, *reh'g denied* 689 F.2d 190 (5th Cir.1982); *Rhodes v. Stewart,* 705 F.2d 159 (6th Cir.1983); *In re Sullivan,* 680 F.2d 1131 (7th Cir.1982); and *Hinkson v. Pfleiderer,* 729 F.2d 697 (10th Cir.1984).

The congressional criticism prior to enactment of the Bankruptcy Code was that "most [of the state exemption laws] are outmoded, designed for more rural times, and hopelessly inadequate to serve the needs of and provide a fresh start for modern urban debtors". H.Rep. No. 95–595, 95th Cong., 1st Sess. 126–127 (1977); U.S. Code Cong. & Admin.News 1978, 5787, p. 6087. The purpose in passing the new Bankruptcy Code was to give debtors a meaningful "fresh start", in light of modern society. If the state exemption laws

accomplish that goal, it matters not whether the state is more generous than Congress in granting exemptions. *See, e.g., In re Lausch,* 16 B.R. 162 (D.M.D.Fla.1981), where the Florida homestead exemption has no ceiling on amount and was upheld even though the federal exemption is limited to $7,500.00.

■ In this case, the Colorado exemption is more generous than the federal. Unlike Colorado, Congress limited the exemption to $7,500.00, required that there be personal *bodily* injury, and excluded any proceeds or payments for pain and suffering. Nevertheless, this Court finds that even under the facts of this case, neither 11 U.S.C. § 522(b)(1) nor §§ 13–54–107 and 13–54–102(1)(n), C.R.S. 1973 are unconstitutional on their face or as applied. It is, therefore,

ORDERED that the claim of Merck & Company is disallowed.

FURTHER ORDERED that the objections to the Debtors' Claim of Exemptions are denied because neither Merck & Company nor the Trustee has standing to file the objections and the Trustee's independent objection was untimely.

FURTHER ORDERED that within ten (10) days of the date of this order, any party may file a written request for the withdrawal of his exhibits received in evidence or in the possession of the Court. Upon conclusion of all appellate review pertinent hereto, or upon expiration of time to initiate such review, as the case may be, exhibits so requested shall be returned. Thereafter, the Clerk may destroy or otherwise dispose of any exhibits not requested and returned in accordance with this order.

## APPENDIX I

### STIPULATION BETWEEN THE DEBTORS AND MERCK & COMPANY

For the purpose of the hearing on Merck & Company's Objection to the Debtors' Claim of Exempt Property, the parties stipulate and agree as follows:

1. The Debtors filed their bankruptcy case pursuant to Chapter 7 of Title 11, United States Code, on May 31, 1984 in the United States Bankruptcy Court for the District of Colorado.

2. On or about February 24, 1982, the Debtors as Plaintiffs commenced an action against the Eli Lilly Company and other defendant, including Merck, Sharpte & Dohme, a division and subsidiary of Merck & Company, Inc., in Denver District Court, Case No. 82–CV–1490.

3. The civil action referred to in the foregoing paragraph was pending on the date the Debtors filed their bankruptcy case. Attached hereto and incorporated herein by this reference as Exhibit A is a true and accurate copy of the Debtors' Complaint in Case No. 82–CV–1490. Through the date of this Stipulation, the Complaint has not been amended in any respect.

4. In their B–4 schedules filed with the Bankruptcy Court, the Debtors have each claimed as exempt the proceeds, if any, of the civil action described in Paragraph 2, above, pursuant to Section 13–54–102(n), C.R.S.

5. On or about September 7, 1984 Steven L. Zimmerman, Esq., attorney for the Debtor Jon Keyworth, assigned his unsecured claim for $75.00 to Merck & Company, Inc. Debtors contend that the proprietary of the assignment to Merck & Company and their standing, if any, to bring this objection is an issue to be determined by this Court.

6. The second issue for this Court to determine in connection with Merck & Company's Objection to the Debtors' Claim of Exempt is validity and extent to which the Debtors have properly claimed as exempt their rights to proceeds, if any, from Case No. 82–CV–1490.

Respectfully submitted,
ROATH & BREGA, P.C.
By /s/ Carl A. Eklund
Carl A. Eklund
P.O. Box 5560 T.A.
Denver, Colorado 80217
(303) 691–5400

■■■■■■■

ATTORNEYS FOR DEBTORS

ROTHGERGER, APPEL & POWERS

By/s/ Garry R. Appel
Garry R. Appel
1600 Broadway
24th Floor
Denver, Colorado   80202
(303) 861–2600

ATTORNEYS FOR MERCK & COMPANY

## APPENDIX II

## STIPULATION IN LIEU OF DEPOSITION

In lieu of taking the deposition of an officer of Merck & Co., Inc., a party to the contested matter involving Merck & Co., Inc.'s Objection to the Debtor's Claim of Exempt Property, Merck & Co., Inc., and the Debtors, by and through their respective counsel, Rothgerber, Appel, Powers & Johnson and Roath & Brega, P.C., hereby stipulate and agree as follows:

1. The only discussions concerning the purchase of the Zimmerman claim in the Keyworth bankruptcy, and the assertion of the objection to the Debtors' claimed exemptions of Merck & Co., Inc., occurred between counsel for Merck & Co., Inc. at Rothgerber, Appel, Powers & Johnson, and Merck & Co., Inc.'s internal counsel. Merck & Co., Inc. claims an attorney-client privilege as to all such discussions. Merck & Co., Inc. represents that there are no documents responsive to the Debtors' Request for Production of Documents as to which an attorney-client or work-product privilege is not claimed and applicable.

2. Merck & Co., Inc. is a New Jersey corporation whose principal place of business is located in Rahway, New Jersey. Merck & Co., Inc.'s principal business is discovering, developing, producing and marketing products and services for the maintenance or restoration of health and the environment. Merck & Co., Inc. has approximately 163 subsidiaries, none of which have as their principal business the collection of debts owed to parties not otherwise related to Merck & Co., Inc.

3. Merck, Sharpe & Dohme is a division of Merck & Co., Inc. The principal business of Merck, Sharpe & Dohme is the manufacture and sale of pharmaceutical drugs. Merck, Sharpe & Dohme is a defendant in a civil action no. 82 CV 1490 in the Denver County District Court, in which action the Debtors are Plaintiffs, and which action is the subject of the Debtors' claim of exemption and Merck & Co., Inc.'s objection thereto.

Dated this 8th day of January, 1985.

ROTHGERBER, APPEL, POWERS & JOHNSON

By: /s/ Garry R. Appel
Garry R. Appel
1600 Broadway, 24th Floor
Denver, Colorado   80202
(303) 861–2600
Attorneys for Merck & Co., Inc.

ROATH & BREGA, P.C.

By: /s/ John E. Maas
Carl A. Eklund
John Edward Maas
Post Office Box 5560, T.A.
Denver, Colorado   80217–5560
(303) 691–5400
Attorneys for the Debtors