ENTERPRISE FINANCIAL GROUP, INC.

v.

CURTIS MATHES CORPORATION.

No. 6:95 CV 194.

United States District Court, E.D. Texas, Tyler Division.

June 10, 1996.

Gary Clark, Gardere & Wynne, Dallas, TX, for respondent.

## MEMORANDUM OPINION AND ORDER

HANNAH, District Judge.

Enterprise Financial Group, Inc. appeals the decision of the bankruptcy court granting the Liquidating Trustee's Emergency Motion to Clarify and to the Extent Necessary, Modify the Second Amended Plan of Reorganization. Upon review of the briefs and the record below, the court finds that the judgment of the bankruptcy court should be reversed.

### Background

This case involves a dispute between the trustee of the creditors' trust established under the debtor's plan of reorganization and a beneficiary of the trust, Enterprise Financial Group, Inc. ("EFG") by virtue of its purchase of two unsecured claims in December, 1994.

The debtor, Curtis Mathes Corporation, was a manufacturer and retailer of televisions, vcr's and home video cameras. Due to financial problems, the debtor filed a Chapter 11 bankruptcy petition on January 27, 1992. Shortly thereafter, Jason Searcy was appointed trustee of the debtor's bankruptcy estate. Mr. Searcy filed the debtor's Second Amended Plan of Reorganization (the "Plan"), which was later confirmed. Under the Plan, the debtor's creditors would be partially paid on their claims and the debtor would emerge from bankruptcy as a new company called Reorganized Curtis Mathes. Under the Plan, different types of creditors were placed into different classes, with each class receiving the rights to certain assets and payments from the debtor after the Plan was approved by the bankruptcy court. EFG is a member of the Class 14 unsecured creditors.

Under the Plan, repayment to the Class 14 creditors consisted of ongoing cash payments and the transfer of all claims and causes of action against third parties owned by the debtor to a liquidating trust established for the benefit of the Class 14 creditors (the "CM Liquidating Trust"). The trust is administered by Appellee, James N. Howard,

Jared Giddens, Christopher R. Graves (on the briefs), Self, Giddens & Lees, Oklahoma City, OK, for petitioner.

as trustee (the "Liquidating Trustee"). Under the Plan, Reorganized Curtis Mathes obtained the assets not transferred to the CM Liquidating Trust and assumed management of the debtor's business postconfirmation. Reorganized Curtis Mathes retained no interest in the claims transferred to the trust after confirmation of the Plan. Such claims and causes of action were thereafter the sole property of the CM Liquidating Trust. Payments to creditors began slightly over a year later, at which time the Plan became substantially consummated under the Bankruptcy Code.

Three provisions of the Plan are pertinent to this proceeding. Section 8.1 of the Plan provided as follows:

8.1 *Preservation and Handling of Claims.* Unless otherwise specifically provided for to the contrary in this Plan, all rights pursuant to Sections 502, 510, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy Code not settled prior to or as a part of this Plan, all fraudulent transfer claims pursuant to Section 548 of the Bankruptcy Code, all claims relating to post-petition transaction under Section 549 of the Bankruptcy Code, **all claims against any third party on account of an indebtedness or any other claim owed to or in favor of the Debtor** (including the Two Causes of Action [1]) are hereby preserved and retained for the benefit for the CM Liquidating Trust. (emphasis added).

Section 11.5 of the Plan provides that:

11.5 *Jurisdiction Retained.* Until the case is closed, the Court shall have jurisdiction of all matters arising under, arising out of or relating to this case, including but not limited to, the following:

11.5.2 To consider any modification of this Plan under Section 1127 of the Code and/or modification of this Plan after substantial Consummation as defined in Section 1101(2) of the Code;

\* \* \* \* \* \*

11.5.10 To correct any defect, cure any omission or reconcile any inconsistency in the Plan or Confirmation Order which may be necessary or helpful to carry out the purposes and intent of the Plan

. . . .

Finally, Section 11.6 of the Plan provides that:

11.6 *Modification of the Plan. . . .* After confirmation of the Plan, the Proponent may, with approval of the Court, and so long as it does not materially or adversely affect the interest of the creditors or shareholders, amend the Plan to remedy any defect or omission or to reconsider any inconsistencies in the Plan or in the confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan.

Subsequent to Plan confirmation, the Debtor discovered its claims against Founders National Bank and filed a lawsuit in Oklahoma state court for fraud, detrimental reliance, negligence and breach of fiduciary duty in connection with the Debtor's entry into a contract with EWC, Inc. to provide six-year warranties on the Debtor's products. This state court litigation is still pending. A cause of action against Founders National Bank (now known as Boatmen's First National Bank of Oklahoma) was not specifically identified in Section 8.1 of the Plan.

On December 8, 1994, EFG purchased Mastercraft Business Forms & Commercial Printing, Inc.'s unsecured claim of $12,575.12 against the Debtor and MD Electronics, Inc.'s unsecured claim of $7,556.64 against the Debtor. On January 3, 1995, the Liquidating Trustee filed his Motion to Clarify and to the Extent Necessary, Modify the Second Amended Plan of Reorganization. In the motion, the Liquidating Trustee requested that the bankruptcy court clarify or modify the Plan to (i) allow the Liquidating Trustee to pursue the state court litigation and recover damages incurred on or prior to January 27, 1992, the Debtor's petition date, and (ii) allow Reorganized Curtis Mathes to pursue

---

1. In the Plan, "Two Causes of Action" means such accounts, contract rights, causes in action, general intangibles, and claims against Providence Lloyd's Insurance Company and Matsushi-ta–Kotabuki Electronics Industries, Ltd. and any agents, employees and servants thereof. (D.R. No. 3 at p. 5). These lawsuits are not implicated in this proceeding.

the state court litigation and recover damages incurred subsequent to January 27, 1992.[2] In response to the Liquidating Trustee's motion, EFG filed its Objection to Amended Motion to Modify Plan. EFG was the only creditor that objected to the motion.

The bankruptcy court approved the Liquidating Trustee's proposed modification. The bankruptcy court determined the Plan language providing for the transfer of claims to the CM Liquidating Trust was somewhat ambiguous, thus characterizing the modification as a clarification of the Plan regarding an asset not fully and clearly addressed in the Plan. The Court further determined that alternatively, if the proposed change was a modification, the retention-of-jurisdiction provisions of the Plan allowed such modification even if the Plan was substantially consummated and such modification is inconsistent with 11 U.S.C. § 1127(b). The bankruptcy court reasoned that res judicata applies to bar an objection to the retention of jurisdiction provisions of the Plan under *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987). EFG was denied standing to assert its objection as an initial matter at the hearing because the bankruptcy court found that EFG's acquisition of its Class 14 claims was in bad faith.

On February 1, 1995, the bankruptcy court entered its Order Approving Clarification and Modification of Second Amended Plan of Reorganization. It is from this order that EFG appeals.

### Analysis

I. *Jurisdiction and Standard of Review*

■ This court has appellate jurisdiction under 28 U.S.C. § 158(a). The findings of fact of the bankruptcy court are reviewed under a clearly erroneous standard. Fed. R.Bankr.P. 8013. Conclusions of law are reviewed de novo. *In re Sadkin*, 36 F.3d 473, 475 (5th Cir.1994).

II. *Standing*

■ Standing is a threshold question that determines the power of the court to entertain the suit. *Coleman v. Champion International Corp.*, 992 F.2d 530, 532 (5th Cir.1993). The bankruptcy court denied EFG standing to object to the Liquidating Trustee's motion to clarify or modify the Second Amended Plan of Reorganization, finding that EFG's post-confirmation purchase of unsecured claims in the Debtor's bankruptcy proceeding was done in bad faith.

Whether 11 U.S.C. § 1109(b) contains a good faith standard is an open question in the Fifth Circuit. Section 1109(b) provides that "a party in interest, including ... a creditor, ..., may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The Bankruptcy Code does not distinguish between creditors existing at the time of a bankruptcy case filing and those that attain creditor status postpetition. *In re Embrace Systems Corporation*, 178 B.R. 112, 120 (W.D.Mich. 1995). Moreover, the language of Section 1109(b) imposes no good faith requirement. For purposes of this analysis the court assumes, without deciding, that § 1109(b) contains such a good faith standard.[3]

The bankruptcy court relied upon the holding in *In re Keyworth*, 47 B.R. 966 (D.Colo. 1985), to deny EFG standing. In *Keyworth*, Chapter 7 debtors listed the proceeds of a pending state court lawsuit in which they were plaintiffs as an exempt asset. Subsequent to the filing of the debtors' Chapter 7 petition, an affiliate of a defendant in the state court lawsuit purchased a $75 unsecured claim against the debtors and proceeded to file an objection to the debtors' claim of exempt property. Before conducting a hearing on the objection, the bankruptcy court considered the standing of the objecting creditor upon the debtors' contention that the creditor's purchase of the claim violated equitable principles and amounted "to a purchase of this Court's jurisdiction for an ulterior motive." *Id.* at 971. The *Keyworth*

---

**2.** The cutoff date was later changed to October 15, 1992, the effective date of the Plan.

**3.** It is clear to the court that EFG meets the standing requirements of § 1109(b), if no good faith standard applies, because it is the holder of two Class 14 unsecured claims.

court found the following factors persuasive in its determination that the creditor acted in bad faith:

> [The creditor] is a defendant in a state court suit with a potential liability of over $7 million to the Debtors. It learns of the Debtors' bankruptcy and purchases a $75.00 claim for $50.00 and immediately files an objection to the Debtors' claimed exemption to the proceeds of that lawsuit. It is not in the business of purchasing and collecting such claims. It has no other stake in the bankruptcy proceeding. Its avowed purpose ... is incredible. When the Debtors attempted, through proper discovery, to learn the facts surrounding [the creditor's] purchase of the claim they were met with frustration—[the creditor] asserted an attorney-client privilege....

*Id.*

■ *Keyworth* is distinct from the case at bar. In *Keyworth,* the creditor was not in the business of purchasing and collecting such claims. Contrastingly, EFG is in the business of buying claims and other interests for investment purposes. (R.Vol. II, Hearing Transcript p. 17). Further, the record does not support the bankruptcy court's determination that EFG acted in bad faith in acquiring its Class 14 claims. *See In re Zaleha,* 162 B.R. 309, 315 (D.Idaho 1993) (declining to follow *Keyworth* and finding insufficient evidence of bad faith to deny creditor standing). At best, the record indicates mere conjecture and speculation as to why EFG purchased the claims. *See, e.g.,* R.Vol II, Hearing Transcript pgs. 15–22. No evidence or testimony was submitted on the issue of bad faith and standing. R.Vol II, Hearing Transcript p. 21. Appellee took the position that standing is a question of law, so no testimony or evidence was required. However, in order for a court to rule on a standing issue based upon a "bad faith" argument, evidence must be presented that the party acted in bad faith. The record is devoid of any such

evidence. *See, e.g., In re Keyworth,* 47 B.R. at 971 (where stipulations were filed regarding "bad faith" factors considered by the court).

Appellee takes the untenable position that EFG should be denied standing even though Appellee failed to produce any evidence that EFG acted in bad faith. The court cannot transform the arguments and conjecture made by Appellee in the hearing below into evidence. The court cannot affirm the conclusion that EFG acted in bad faith when no evidence exists in the record to support such a conclusion.

Based upon the record below, the court finds there is an insufficient basis to deny EFG standing in this bankruptcy proceeding on the basis of bad faith. Therefore finding that EFG acted in bad faith is clearly erroneous. The conclusion by the bankruptcy court that EFG does not have standing is reversed.

### III. *Modification of the Plan*

#### A. *Clarification vs. Modification*

■ Appellee argues that any proposed change to the Plan is a mere clarification and not a modification. Appellee adopts this position because modifications after substantial consummation are specifically prohibited under the Code. *See* 11 U.S.C. § 1127(b). It is undisputed that substantial consummation has occurred.[4]

The determination of whether the Plan is clear or ambiguous is a question of law subject to de novo review. *In re Texas General Petroleum Corp.,* 52 F.3d 1330, 1335 (5th Cir.1995). The rules of contract interpretation are applied to interpretation of the Plan. *Id.*

The bankruptcy court found that the Plan was ambiguous as to the disposition of the Oklahoma state court litigation claims, as they were not specifically addressed in the Plan. Appellee asserts that when a change

---

4. Under 11 U.S.C. § 1101(2), "substantial consummation" means the following has occurred:

   (A) transfer of all or substantially all of the property proposed by the plan to be transferred;

   (B) assumption by the debtor or by the successor to the debtor under the plan of the

business or of the management of all or substantially all of the property dealt with by the plan; and

   (C) commencement of distribution under the plan.

to a plan of reorganization addresses an issue on which the plan had previously been silent, the change amounts to a clarification of the plan, not a modification. *United States v. APT Industries, Inc.,* 128 B.R. 145, 147 (W.D.N.C.1991).

EFG counters that the Plan is clear and unambiguous because it provides that the claims asserted by Reorganized Curtis Mathes in the state court litigation are owned by the CM Liquidating Trust. Paragraph 8.1 of the Plan provides:

*Unless otherwise specifically provided for to the contrary* in this Plan ... *all claims against any third party* on account of an indebtedness or any other claim owed to or *in favor of the Debtor* ... are hereby preserved and retained for the benefit of the CM Liquidating Trust. *On the Effective Date, all such claims and causes of action ... shall be transferred and assigned to the CM Liquidating Trust.... The CM Liquidating Trustee is designated as the representative of the estate to pursue the various claims* and to defend the estate against all claims asserted against it. (Emphasis added).

Therefore, under the Plan, the CM Liquidating Trust had rights to all claims against any third party. The proposed change to the Plan, however, limits the CM Liquidating Trust to any proceeds attributable to damages arising on or before October 15, 1992, the effective date of the Plan. Appellee contends that this change more accurately reflects the intent of the Plan and clarifies the right of Reorganized Curtis Mathes to pursue claims and damages in state court arising after the effective date of the Plan.

Even if the proposed change does more accurately reflect the intent of the Plan, the proposed change modifies a material term of the Plan. Under the Plan all claims against any third party were preserved and retained for the benefit of the CM Liquidating Trust. The Plan is not silent on this issue. The

language of the Plan is clear and unambiguous. The proposed amendment to the Plan, however, now allows Reorganized Curtis Mathes to pursue some of those claims which were expressly reserved for the CM Liquidating Trust. Under no circumstances can this be viewed as a mere clarification. Even the bankruptcy court indicated that this was a modification. In Exhibit A to the bankruptcy court's Order Approving Clarification **and Modification** of Second Amended Plan of Reorganization, the court begins by stating, "Section 8.1 of the Plan shall be and hereby is **modified** by adding the following...." (emphasis added). The court concludes that the proposed amendment to the Plan was a modification.

### B. *Modification under Republic Supply Co. v. Shoaf*

■ Because the court views the amendment as a modification of the Plan, it becomes necessary to address the ultimate issue: whether a plan of reorganization can be modified after substantial consummation. As the bankruptcy court recognized, 11 U.S.C. § 1127(b) expressly prohibits modification of the Plan after substantial consummation.[5] *See, e.g., In re Dam Road Mini Storage,* 156 B.R. 270 (S.D.Cal.1993); *In re Burnsbrooke Apartments of Athens, Ltd.,* 151 B.R. 455, 458 (S.D.Ohio 1992); *In re Scotland Guard Servs., Inc.,* 139 B.R. 264, 265 (D.P.R.1991); *In re Burlingame,* 123 B.R. 409, 411 (N.D.Okla.1991); *In re Fansal Shoe Corp.,* 119 B.R. 28, 30 (S.D.N.Y.1990); *United States v. Novak,* 86 B.R. 625, 631 (D.S.D. 1988); *In re Hayball Trucking, Inc.,* 67 B.R. 681, 684 (E.D.Mich.1986); *In re Northampton Corp.,* 37 B.R. 110, 113 (E.D.Pa.1984). However, the bankruptcy court found that a retention-of-jurisdiction provision in Section 11.5 of the Plan allows a modification to occur even if the Plan is substantially consummated. The bankruptcy court reasoned that res judicata applies to bar an objection to the retention-of-jurisdiction provision of the Plan relying upon a Fifth Circuit deci-

---

5. *11 U.S.C. § 1127(b) provides in relevant part:*
   (b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan **and before substantial consummation** of such plan, but may not

modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title.
(emphasis added).

sion, *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987).

*Shoaf* dealt with whether a plan provision providing for the release of a non-debtor guarantor could be attacked after confirmation as violative of 11 U.S.C. § 524(e). In *Shoaf*, the bankruptcy court confirmed a reorganization plan of a third party that released a guaranty executed by Shoaf in favor of creditor Republic Supply Company. In the bankruptcy court, Republic neither objected to this provision of the plan nor appealed the confirmation of the plan. Prior to confirmation of the plan, Republic had initiated an action on the guaranty against Shoaf. After the plan was confirmed, however, Shoaf raised the defense of res judicata. The district court rejected Shoaf's defense, holding that the plan provision that released the guaranty was without effect because the bankruptcy court expressly lacked statutory authority to release a third-party guarantor from his obligation on a bankrupt's note.

■ On appeal, Republic contended that a provision in a plan of reorganization which provides for an action prohibited by or inconsistent with the Bankruptcy Code is of no effect. The Fifth Circuit disagreed with this argument, stating that "[r]egardless of whether that provision is inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it is nonetheless included in the plan, which was confirmed by the bankruptcy court without objection and was not appealed." *Shoaf*, 815 F.2d at 1050. The court held that Republic's remedy was to appeal the confirmation of the plan, but that its failure to timely exercise such a remedy foreclosed it from asking the court to now review the plan and its release provision on the merits. The court found the necessary elements present for application of res judicata: "[T]he parties must be identical in both suits, the prior judgment must have been

rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases." *Id.* at 1051 (citing *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir.1983) (en banc)).[6]

The question then becomes, does *Shoaf* apply res judicata effect to a retention-of-jurisdiction provision contrary to the Code but nonetheless placed in a plan which was confirmed and never appealed? The court thinks not. The court recognizes that *Shoaf* has been extended beyond situations involving guarantor release provisions contrary to the Code. *See, e.g., In re Szostek*, 886 F.2d 1405 (3d Cir.1989); *In re Moussa*, 95 B.R. 449 (N.D.Tex.1989). However, Appellee fails to cite and research fails to reveal a single case wherein the holding of *Shoaf* was applied to a retention-of-jurisdiction provision in a plan of reorganization. There is a reason for that—jurisdiction is different.

■ No action of the parties can confer subject matter jurisdiction upon a federal court. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). A bankruptcy court "cannot write its own jurisdictional ticket" by including such a provision in a confirmed plan of reorganization. *Zerand–Bernal Group v. Cox*, 23 F.3d 159, 164 (7th Cir.1994). The standards by which bankruptcy courts should exercise postconfirmation jurisdiction have been summarized in *In re Pauling Auto Supply, Inc.*, 158 B.R. 789 (N.D.Iowa 1993):

> After confirmation, the court must look first to the Code to determine if there is any basis for taking jurisdiction of the dispute presented. **The parties under the plan can agree to areas of jurisdictional retention, but they should not be able to give the court jurisdiction where the statute provides no basis for it;** nor may

**6.** Appellant EFG appears to argue that the identity of parties element has not been met because EFG was not a party in interest until after confirmation. *See* Appellant's Brief at 12. EFG contends that "*Shoaf* only applies res judicata to existing rights of parties which are fixed on the date of confirmation." *Id. See also In re Howard*, 972 F.2d 639, 641 (5th Cir.1992), the Fifth Circuit stated: "*Shoaf* stands for the proposition

that a confirmed ... plan is res judicata as to **all parties who participate in the confirmation process.**" (emphasis added). However, a non-party is in privity with a party for res judicata purposes if he has succeeded to the party's interest in property; then the non-party is bound by prior judgments against the party. *Latham v. Wells Fargo Bank*, 896 F.2d 979, 983 (5th Cir.1990).

they deprive the court of its jurisdiction. An agreement as to post-confirmation jurisdiction should be based upon a reasonable construction of the Code's grants of jurisdiction. **The parties may not expand the court's jurisdiction beyond its legal boundaries merely by plan provision.**

*Id.* at 794. (emphasis added).

*Shoaf*'s brush does not paint as broadly as Appellee suggests. The court explained:

[Section 524(e)] does not by its specific words preclude the discharge of a guaranty when it has been accepted and confirmed as an integral part of a plan of reorganization.

*Shoaf,* 815 F.2d at 1050. Implicit in that explanation is that the guarantor release provision was an "integral part" to the plan of reorganization at issue. There is no such indication in the record that a retention-of-jurisdiction provision was an "integral" part of the plan of reorganization in the case at bar.

More importantly, Appellee's reliance upon *Shoaf* is misplaced because the policy considerations are entirely distinct. *Shoaf* attempted to advance the policies of certainty and reliance underlying res judicata which are particularly important in the Chapter 11 context. *See generally* Aaron J. Bell, Comment, *Making Cramdown Palatable: Post–Confirmation Interest on Secured Claims in a Chapter 11 Cramdown,* 23 Williamette L.Rev. 405 (1987); Brett Ludwig, Comment, *In re De Laurentiis Entertainment Group: Sacrificing Confirmed Chapter 11 Plans to Delinquently Asserted Setoff Rights,* 77 Minn.L.Rev. 871, 878 (1993). The idea is to preclude parties from relitigating issues that were or could have been raised at the time of confirmation or shortly thereafter. However, what the Appellee is asking the court to do is to allow it to modify a confirmed plan which is clear and unambiguous and has been substantially consummated by using a res judicata argument under the auspices of promoting certainty and reliance. Appellee's position promotes mayhem by allowing a bankruptcy court to retain jurisdiction to continually modify a confirmed and substantially consummated plan of reorganization, contrary to the express language of the

Code. The court cannot countenance such a position.

Therefore, the conclusion of the bankruptcy court that *Shoaf* applies to give res judicata effect to the Plan's retention-of-jurisdiction provision is reversed.

### Conclusion

The judgment of the bankruptcy court is in all things REVERSED.