In the Matter of Marvin W. DAVISON, and Betty S. Davison, Debtors.

Arthur B. FEDERMAN, trustee in bankruptcy, Plaintiff,

v.

Marvin W. DAVISON, and Betty S. Davison, Defendants.

Bankruptcy No. 83–00699–SW–1–3.
Adv. No. 86–0384–SW–3.

United States Bankruptcy Court, W.D. Missouri, W.D.

March 12, 1987.

Arthur B. Federman, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, P.C., Kansas City, Mo., for plaintiff.

Richard L. Knight, Campbell, Morgan & Gibson, P.C., Kansas City, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DENYING DEFENDANTS' DISCHARGES IN BANKRUPTCY

DENNIS J. STEWART, Chief Judge.

The trustee in bankruptcy, in the action at bar, seeks denial of the debtors' discharges in bankruptcy on two separate and independent grounds: (1) that the debtors failed and refused to list indebtedness incurred and payable on their monthly operating reports filed with the court in accordance with the standing rules and orders of the court and (2) that the debtors failed satisfactorily to explain the diminution of assets to meet liabilities.

The action came on before the court for hearing of its merits on February 3, 1987, whereupon the plaintiff trustee in bankruptcy appeared personally and as his own counsel. The defendants appeared personally and by Richard L. Knight, Esquire, their counsel.

The evidence which has been adduced by the parties demonstrated that the debtors filed a petition for relief under chapter 11 of the Bankruptcy Code on March 16, 1983; that, as chapter 11 debtors, they were obligated to file monthly operating reports under the local rules of practice [1]; that, according to the form of the monthly operating report prescribed by the court, on which the debtors were required to file their monthly operating reports, the debtors were to disclose each month each and all of the debts which they had incurred but not paid [2]; that they had been advised at one of the initial hearings held in the case that they should not incur long-term debt, but rather should live on a "cash" basis during the course of the chapter 11 proceedings, unless the court granted special permission to incur long-term indebtedness [3]; that the monthly operating reports filed by the debtors pursuant to these rules and instructions were correctly filed until August 1983 [4]; that, beginning with that month, the debtors failed to list the debts incurred and unpaid; that they thereafter continued to fail to list the ever-growing debts incurred—inventory purchases, mostly, but also some sizeable obligations to relatives and others on account of loans which were extended to them [5]—until, at the time of conversion of the chapter 11 proceedings to chapter 7 proceedings on September 10, 1985, the incurred but unpaid indebtedness had reached a figure totaling in excess of $800,000 [6]; that the debtor Marvin W. Davison, in the trial of the action at bar, contended testimonially that the reason that the debtors commenced the practice of not listing accounts payable on the monthly operating reports was that they relied on advice given them by former bankruptcy Judge Frank P. Barker, Jr.; that it was Judge Barker who formerly presided over the within chapter 11 proceedings; that, at the commencement of one of the hearings conducted by Judge Barker, Judge Barker advised Mr. Davison, according to Mr. Davison's testimony, to list merchandise which he had purchased during the month at a different place on the form of the monthly operating statement [7]; that, from the instructions which were thus issued by Judge Barker, it reasonably appeared to the Davisons, according to Mr. Davison's testimony, that they were simply to list, on the monthly operating reports, the purchases of inventory and supplies which they had made during the month and the payments which they had made, thus leaving the difference between the two sums as the accounts incurred and

1. See former Rule 8(F) of the Local Rules of Bankruptcy Procedure to the following effect: "Unless otherwise ordered, every trustee or debtor in possession, authorized to operate the business, must file with the clerk, in duplicate, and not later than the 15th of each month, a verified monthly report which sets forth a summary of the operations of the business during the preceding month. The report is to include a classified statement of receipts and disbursements and balance on hand at the beginning and end of the month; where payments are to employees, the amounts of deductions for withholding and social security taxes and whether or not the deductions have been deposited in a special account; inventory on hand at the beginning and end of the month; indebtedness incurred and remaining unpaid and credit extended, and contractual and other obligations assumed."

2. The form of the monthly operating report contains a prominent section entitled *"Obligations incurred and not paid this month"* with blank spaces below it in three columns, "to whom owed," "amount," and "reason unpaid."

3. There is no contradiction in the evidence on this point, and it is supported by the relevant hearing transcript.

4. Until that time, the debtors continued to report *"Obligations incurred and not paid this month."*

5. Among these was a loan in the approximate sum of $25,000 from Goldie Davison; another of $80,000 from Loren Howerton; and yet another of $21,950 from Brent and Brian Davison. According to the testimony of Mr. Davison, these loans were for personal purposes, as opposed to business purposes.

6. According to the uncontradicted evidence, the sum of postpetition accounts payable is $778,-248.18.

7. Apparently, Judge Barker instructed Mr. Davison to place the purchases all in the form of goods purchased. Thus, those which were not counterbalanced by entries in the "expenditures" column could be regarded as not paid for.

unpaid and payable [8]; that the records of the hearings which were held before Judge Barker do not disclose any on-the-record evidence of such advice having been given by Judge Barker [9]; that Judge Barker, in a deposition taken on December 2, 1986, testified that he did not recall having given such advice to the debtors [10]; that Judge Barker further stated in the same deposition that he did not know that the debtors were, throughout the course of the chapter 11 proceedings, building up a massive amount of postpetition debt and that, had he known it, he "would have done something about it" [11]; that Judge Barker further testified in his deposition that this chapter 11 case was assigned to him by the usual method of random assignment whereas the files and records of the court show that the case was transferred by the undersigned to Judge Barker at his request for reassignment [12]; that, in his statements to the accountant for the trustee prior to the trial of this action, Mr. Davison stated that he not expressly set out the accounts payable in the monthly operating reports because he had been instructed not to do so by his counsel, but there is no substantive evidence to this effect, and the contention does not appear to have been advanced by the debtors in the course of the trial of this action [13]; that, as of December 31, 1982, prior to the date of bankruptcy of the debtors (March 16, 1983), the debtors reported that they had $2,437,000.00 in value of inventory; that, as of the abovementioned date of bankruptcy, the debtors scheduled a much lower value of inventory, $1,907,-000.00; that, to explain this sizeable diminution of assets, the debtors presented the testimony of a relative of the debtors, one Loren Howerton, who stated that the apparent shortage of inventory at the time of the filing of the petition resulted from an accounting error whereby some $251,000 was reported twice in the initial statement.[14] But this accounting, even if accepted, would still leave a total of some $279,000 in inventory not accounted for.[15]

### Conclusions of Law

The facts thus found demonstrate that resolution of the trustee's first objection to discharge—that of intentional failure and refusal to list the unpaid accounts payable on the recurring monthly operating reports—turns on the issue of whether it is Judge Barker's testimony which is to be believed or whether Marvin Davison's testimony is to be believed. For, if it is true, as Mr. Davison contends, that Judge Barker gave instructions which excused the debtors from their duty to make explicit disclosure of incurred but unpaid accounts, their

8. See note 7, *supra.*

9. This is shown according to the parties' contentions and the court's review.

10. It was further the implication of Judge Barker's testimony that he would not have given the Davisons such advice as they claim they were given.

11. When the unpaid accounts payable were being incurred at a stupendous rate, however, as they were in this case, it seems that even the most superficial attention to them would have resulted in the court's taking some appropriate action.

12. See the order entered by the undersigned in this case on March 21, 1983. Judge Barker, however, did not further reassign the case, but rather presided over it himself.

13. An accountant testified that Mr. Davison had once advised him that the change in reporting

was prompted by advice of counsel. But this appears to have been offered by the trustee for the purpose of impeaching Mr. Davison's contention that he relied on Judge Barker's instructions, and not as substantive evidence.

14. The statement as to the level of inventory on December 31, 1982, came from the defendant's tax statements. Mr. Howerton, the brother-in-law of Mr. Davison, served as the debtors' tax accountant. His testimony to the effect that the December 31, 1982, statement contained a duplication was not supported by any documents, although it was illustrated by a chart. According to the authorities cited in the text of this memorandum, this bald and unsupported, general testimony is an insufficient explanation for the diminution of the inventory. And even if it were otherwise satisfactory, it admittedly does not account for a $279,000 diminution of inventory, which alone can constitute a ground for denial of discharge.

15. See note 14, *supra.*

discharge cannot lawfully be denied.[16] The critical importance of this issue makes it imperative that the trial court analyze the evidence with care, for its determination of the credibility issue will be difficult to overcome on appeal. "[T]he District Court [bears] the same relationship to the Bankruptcy Court as we usually do to the District Court—it sat as an appellate tribunal, not as a finder of fact. The deference owed by the appellate courts to finders of fact is at its highest where the issue turns on the resolution of a direct conflict between live witnesses." *In re Windle*, 653 F.2d 328, 331 (8th Cir.1981). In performing an analysis of the respective testimony of Judge Barker and Mr. Davison, it must initially be observed that Judge Barker's testimony shows that his memory of several of the salient circumstances of this case to be less than perfect. As pointed out above in the findings of fact, Judge Barker did not accurately remember, in his deposition testimony [17], the circumstances under which this case was assigned to him.[18] Further, he stated in his deposition testimony that, had he known that the debtors were incurring large sums of long-term debt, he "would have done something about it." In this particular, however, this court agrees with the contentions of the debtors, made in the course of trial, to the effect that they had made disclosures in the monthly operating reports which should have plainly indicated that monthly purchases of inventory vastly exceeded monthly payments thereon. So Judge Barker, contrary to his deposition testimony, either knew or should have known that considerable amounts of accounts payable were being built up. And, contrary to his testimony, he did not do anything about it. Rather, the court stood by and continued to fend off the prepetition creditors even as it had good reason to know that the postpeti-tion indebtedness was continually increasing, almost at a geometric rate.[19] And finally, Judge Barker's testimony respecting the crucial issue—that concerning whether he did or did not give the Davisons the advice which resulted in their changing the method of their filling out their monthly operating reports—does not consist of an unequivocal denial of ever having given the advice which the Davisons now say that they relied on. Rather, it is given the quality of an admission of faulty memory by statements which appear to state that Judge Barker simply did not recall what was said to the Davisons in this regard, or when.[20]

The plaintiff has pointed out in his concluding arguments that there were accounts payable other than business accounts payable for inventory which were not in any way reported on the monthly operating reports; that among those were loans which were made by the debtor's relatives [21]; and that, therefore, with respect to those loans, the debtors knew or should have known that Judge Barker's instructions—which related only to the place where inventory purchases should be noted on the monthly operating reports—did not excuse them from disclosing those particular debts. But those debts were relatively small and they appear to have been extended and accepted for the purpose of sustaining the debtors' living and personal expenses. Under the circumstances of this particular case, this court cannot say that the debtors did not understand Judge Barker's comments to them to excuse them from listing any of the debts which they had incurred and not paid on the monthly operating reports.

Accordingly, for the foregoing reasons, this court declines to deny the discharge on the grounds that the debtors knowingly

---

**16.** If assented to by the court itself, the conduct would "justified under all the circumstances of the case" within the meaning of § 727(a)(3) of the Bankruptcy Code.

**17.** of December 2, 1986.

**18.** See note 12, *supra.*

**19.** Judge Barker denied motions to convert the proceedings to chapter 7 and to appoint a trust-ee which were in part based upon the continual great increase in postpetition debt.

**20.** Judge Barker's testimony is, in material part, couched in the form of an absence of memory rather than an absolute denial.

**21.** See note 5, *supra.*

**730**

and intentionally failed to disclose their accounts payable on the monthly operating reports. The debtors appear to have a justification for their actions in the statements which were made to them by Judge Barker.[22]

On the other issue, however—that of failure to satisfactorily explain the diminution of assets—the principles which the court is required to apply to the facts established by the evidence leave the court with no other choice but to grant the complaint objecting to discharge. In applying the clear law to the facts at bar, the court is required to find that the entire difference between the prebankruptcy statement of inventory—$2,437,000.00—and that on the schedules—$1,907,000.00—, is not satisfactorily explained. For the cases hold that a general explanation, unsupported by documentation, is insufficient to explain the diminution. "An explanation which is based mostly upon an estimate of the bankrupt, founded upon nothing by way of verification or affirmation by means of books, records or otherwise has been held unsatisfactory. Even though the underlying facts referred to by a bankrupt may suggest a plausible explanation, the testimony may be so general as to be insufficient. More is required of the bankrupt in the way of explanation than mere generalities." 1A Collier on Bankruptcy para. 14.59, pp. 1437–1438 (14th ed. 1976). The testimony of the witness Howerton to the effect that a double reporting of inventory had initially occurred was general and conclusionary and not supported by any documentation. Therefore, within the meaning of the foregoing and other applicable authorities, this court must conclude that the explanation was not satisfactory.[23]

Even if it were satisfactory, however, it only partially explains the vast difference between the amount of inventory initially reported and that which was on hand as of the date of bankruptcy. A difference of $279,000.00 is too great to be left unexplained. This court formerly held in *Matter of Newcomb*, 51 B.R. 276 (Bkrtcy.W.D. Mo.1985), affirmed, 75 B.R. 4 .(W.D.Mo. 1985), that failure to explain a $389,000 difference warranted denial of discharge under section 727(a)(5) of the Bankruptcy Code. The district court, in affirming the judgment of this court, found that the difference could be as small as $227,000 and determined that "this was 'too much unaccountability for the court to suffer in determining whether discharge should be denied.'" The amount is large and the explanation in this case is unsatisfactory and the court has no alternative but the deny discharge on this basis. This is so even though it has not been established that the debtors had any fraudulent intention in this regard. "The purpose of this exception ... is to provide insurance against the disappearance of a substantial portion of the bankrupt's assets without explanation. Therefore, regardless of the intent of the bankrupts, if they are unable to explain satisfactorily the disappearance of a significant part of their assets, discharge must be denied." *Matter of Foglesong*, In Bankruptcy Nos. 76–B–222–SJ and 76–B–223–SJ (Bkrtcy.W.D.Mo. July 6, 1977), affirmed, Civil Action No. 77–6068–CV–SJ (W.D.Mo. April 27, 1978). "[I]t appears that the ... element of intent ... is not required here." 1A Collier on Bankruptcy para. 14.59, p. 1433 (14th ed. 1976).[24]

Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED that the discharges in bankruptcy of the defendants be, and they are hereby, denied.

---

**22.** See note 16, *supra*.

**23.** "Although it would seem that many situations which could be brought under this section would also fit under one or more of the other grounds for objection to discharge, it appears that the same element of intent which is necessary, for example, in section 727(a)(2), (3) and (4) is not required." 4 Collier on Bankruptcy para. 727.08, pp. 727–71, 727–72 (15th ed. 1986).

**24.** See note 23, *supra*.