In the matter of Marvin W. DAVISON and Betty S. Davison, d/b/a Davison Enterprises and subsidiaries, Debtors.

### BDH ROCK OF MONMOUTH, ILLINOIS, Claimant,

v.

### Arthur B. FEDERMAN, trustee in bankruptcy, Respondent.

Bankruptcy No. 83–00699–SW–1–11.

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

July 6, 1987.

Steven K. Bogler, Kansas City, Mo., for claimant.

Arthur B. Federman, Linde, Thompson, Fairchild, Langworthy, Kohn & Van Dyke, Kansas City, Mo., for respondent.

ORDER ALLOWING CLAIM OF THE CLAIMANT BDH AS AN EXPENSE OF ADMINISTRATION IN THE SUM OF $10,750.00

DENNIS J. STEWART, Chief Judge.

Now pending before the court is the claim of the claimant BDH for a claim of an administrative expense in the sum of $10,750.00. The facts underlying the claim have been presented to the court, both in a hearing which was previously held and by means of posthearing written submissions made, chiefly on April 22, 1987, by the claimant. The trustee has objected to the allowance of the claim as an expense of administration on the ground that, as a debt incurred following confirmation of the debtors' plan of reorganization, the expense incurred could not be treated as an expense of administration under the provisions of § 503(b) of the Bankruptcy Code.

The files and records in this case show that the debtors' plan of reorganization was confirmed by the court (former bankruptcy judge Frank P. Barker, Jr.) by order entered on November 10, 1983. As pertinent, the confirmed plan contained the following provisions respecting jurisdiction of the bankruptcy court:

"The court shall retain jurisdiction until the Plan has been fully consummated. Such jurisdiction may include the following: Classification of a claim of any creditor or reexamination of a claim which has been allowed for purposes of voting; determination of any objections as may be filed to claims of creditors; and the failure of debtors to object to or examine a claim for purposes of voting shall not be deemed a waiver of debtors' right to object to or reexamine a claim in whole or in part. *Determination of any question regarding the assets of the estate.* Correction of or reconciliation of defects or inconsistencies in the Plan such as may be necessary to carry out the purpose of the Plan. Modification of the Plan after confirmation. Entry of any order necessary to enforce the rights of debtors. Entry of order concluding the case." (Emphasis added.)

In respect of this particular claim, the files and records in this case also show that, on June 10, 1983, some five months before the entry of the order of confirmation of the debtors' chapter 11 plan, Judge Barker entered an order authorizing the purchase of inventory on a consignment basis from the claimant. In his order of that date, Judge Barker stated as follows:

"[T]hat Debtors may accept consignment merchandise from BDH Rock of Monmouth, Illinois and further, that Debtors may pay BDH Rock for the merchandise shipped to Debtors by BDH and sold by Debtors on a daily basis."

It is also gleanable from the files and records in this case that, after the date of confirmation of the debtors' chapter 11 plan, the debtors built up some $800,000 in postconfirmation unpaid indebtedness, the greatest part of it for inventory and supplies, in a manner similar to the method demonstrated by the facts of this case. This was done while the total sum of the prepetition indebtedness—$5,917,031.60—remained totally unpaid. The trustee in bankruptcy currently has a total of $421,157.00 on hand, against which counsel for the debtors have made applications for attorney's fees totaling $145,100.66.

These figures demonstrate the unpalatable situation with which the court is faced in ruling on claims such as that at bar. The debtors have, in substance, by running up a total of $800,000 in postpetition indebtedness, created a new class of creditors and have used the chapter 11 proceedings to hold off their prepetition creditors while doing so. They abused the chapter 11 process, not only to frustrate its primary purpose—the ultimate payment of prepetition creditors—but also to enrich themselves to the extent that they received inventory without paying for it. It seems astonishing to this court, in retrospect, that responsible offices of any court would stand by and tolerate such an outrageous result gradually but certainly to be effected, as it was in this case. Yet, that was precisely what was done in this case. As this court has formerly found in making its findings of fact and conclusions of law in respect to the trustee's objection to discharge in *Federman v. Davison*, 73 B.R. 726 (Bkrtcy.W.D.Mo.1987):

"Beginning with (August 1983), the debtors failed to list the debts incurred and unpaid; that they thereafter continued to fail to list the ever-growing debts incurred—inventory purchases, mostly, but also some sizeable obligations to relatives and others on account of loans which were extended to them—until, at the time of conversion of the chapter 11

proceedings to chapter 7 proceedings on September 10, 1985, the incurred but unpaid indebtedness had reached a figure totaling in excess of $800,000.... [T]he debtors ... had made disclosures [otherwise] in the monthly operating reports which should have plainly indicated that monthly purchases of inventory vastly exceeded monthly payments thereon ... When the unpaid accounts payable were being incurred at a stupendous rate ..., as they were in this case, it seems that even the most superficial attention to them would have resulted in the court's taking some appropriate action."

This insidious process now leaves the court with the Hobson's choice of either further subdividing by one-sixth the distribution which would otherwise have been available to the creditors or else excluding either the prepetition creditors or postpetition creditors, one or the other, from any distribution at all in favor of paying all the funds on hand to the other class of creditors. And, it must be mentioned, counsel for the debtor—as observed above—have filed applications for awards of attorney's fees which would reduce by an additional $145,100.66 the amount which would otherwise be available for creditors.

The trustee, in objecting to the claim of the creditor BDH, contends that the court must elect the first alternative abovementioned—i.e., treat prepetition and postpetition claims on a parity and divide the estate *pro rata* among them. The trustee reasons that the debts incurred after the date of conversion cannot be treated as expenses of estate administration pursuant to § 503(b) of the Bankruptcy Code because— unless the plan or order of confirmation provides otherwise—the estate, under § 1141(c) of the Bankruptcy Code[1], ceases to exist as of the date of confirmation. And, under § 348 of the Bankruptcy Code, such non-administrative expense debts as are incurred by a chapter 11 debtor between the petition for relief and the order

---

1. "Except as provided ... in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor." Section 1141(c) of the Bankruptcy Code.

of conversion are to be treated as ordinary prepetition claims.[2] An unbroken claim of authority, arising from both bankruptcy courts and district courts, requires this result.[3]

In cases in which the estate does not exist after the date of confirmation, this rule is directly applicable and must be followed under the great jurisprudential principle of *stare decisis*. But, even in such cases, if the amount of unpaid postconfirmation debt is, as in the case at bar, significantly larger, then the application of the rule will have a negative effect on the usefulness of chapter 11 reorganization proceedings generally. For, if those who would otherwise do business with reorganization entities are warned by this, and possibly other, examples that they cannot expect full payment for their goods and services, they will soon cease to do business with reorganization debtors and the efficiency of chapter 11 itself will be greatly, if not wholly, reduced. This is especially so in a case such as that at bar in which the supplier has received specific and express assurances, not only from the debtors, but from the court itself. As this court previously observed in *Matter of Isis Foods, Inc.*, 19 B.R. 329, 330 (Bkrtcy.W.D.Mo. 1982), affirmed 27 B.R. 156 (W.D.Mo.1982):

"Thus, for the court initially to grant the chief executive officer this unqualified power to operate the business and the necessary power to make agreements to pay expenses as they currently arise and then, later, to refuse to enforce those agreements according to their clear and admitted terms would be a fraud upon those who are encouraged under the aegis of the bankruptcy court to do business with a chapter 11 debtor. The proposition is too fundamental that the bankruptcy court should not and cannot make itself a party to such a fraud. And such would stultify the purpose and intent of the foregoing provisions of the modern bankruptcy law, which is to encourage the rehabilitation of an honest chapter 11 entity, rather than to permit that entity to victimize those who attempt to fulfill the purpose of rehabilitation by doing business with the chapter 11 debtor. If the agreement were not enforced, the word would rapidly go forth that no person might safely do business with a chapter 11 entity, regardless of the assurances given him by that entity, and all the rest of the provisions of that chapter would accordingly become an unusable dead letter."

The thorough abuse, in fact, to which the chapter 11 process was put in this very case holds forth the potential for a great crippling of the potential for reorganization of entities in future cases under the gener-

---

**2.** "A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 ... of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition."

**3.** *In re Barker Medical Co., Inc.*, 55 B.R. 435, 436 (Bkrtcy.M.D.Ala.1985) ("The confirmation of the plan vested all of the property of the estate in the debtor in this case. By definition, the costs cannot be administrative expenses."); *In re Westholt Manufacturing, Inc.*, 20 B.R. 368, 372 (Bkrtcy.D.Kan.1982) ("At confirmation, all the property of the estate is vested in the debtor, thereby terminating the estate's existence, although the court has continued jurisdiction under section 1142 to oversee the plan's execution. Thus, taxes incurred by the debtor in possession after confirmation are to be treated as prepetition claims in a subsequent conversion of the case."); *United States v. Redmond*, 36 B.R. 932, 934 (D.Kan.1984) ("Unless a reorganization plan provides otherwise, confirmation vests all of the property of the estate in the debtor and releases it from all claims and interests of creditors. See 11 U.S.C. section 1141(b) & (c). The IRS, as well as other post-confirmation creditors of the reorganized debtor, are no longer restrained by the automatic stay in bankruptcy which terminates when the property of the estate vests in the reorganized debtor upon confirmation. See 11 U.S.C. section 362(c). Since the bankruptcy estate is no longer being administered by the trustee or the debtor in possession, taxes which accrue post-confirmation are not incurred as actual, necessary costs and expenses of preserving the estate pursuant to section 503(b)(1)(B). Upon conversion of a Chapter 11 reorganization to a Chapter 7 liquidation, unpaid employment and unemployment taxes are treated the same as prepetition claims. See 11 U.S.C. section 348(d)."); *In re EMC Industries, Inc.*, 27 B.R. 696 (Bkrtcy.D.S.C.1983).

al rule purveyed by the above decisional authority.

Further, in respect of the claim at bar, the facts show without equivocation that an estate was to remain in existence subsequent to the date of confirmation. The confirmed plan clearly provided, as observed above, that the bankruptcy court should retain jurisdiction for the purposes of determining all disputes respecting property of the "estate." If it had been intended that the estate terminate as of the time of confirmation, the plan would have referred to property of the "debtors" rather than of the "estate." Moreover, Judge Barker's order of June 10, 1983, clearly assured BDH of payment for the supplies and inventory shipped by it to the debtors for an indefinite period of time not purporting in any manner to be bounded by the date of confirmation. And the court required the debtors to continue to file monthly operating reports which, as observed above, clearly evidenced the ever-rising level of unpaid inventory accounts—a level of which the judge who formerly presided over this case was well aware and must necessarily have tacitly approved. As to the claim at bar, therefore, this court concludes that it meets all the prerequisites of an administrative expense under § 503(b) *supra,* of the Bankruptcy Code. It will therefore be allowed as such.

In so directing, the court recognizes that the particular manner in which the bankruptcy process has been abused in this case leaves the court and creditors without any really perfect, just remedy. A widespread repetition of the scenario which developed in this case may well mean the death knell for chapter 11.

For the foregoing reasons, it is hereby

ORDERED that the claim of the creditor BDH be, and it is hereby, allowed as an expense of administration in the sum of $10,750.00.