79 B.R. 866 (1987)
In the matter Marvin W. DAVISON and Betty S. Davison, Debtors.
PITTSBURG REFRIGERATION CO., Objecting creditor,
v.
Arthur B. FEDERMAN, trustee in bankruptcy, Respondent.
Bankruptcy No. 83-00699-SW-1-3.
United States Bankruptcy Court, W.D. Missouri, Southwestern Division.
August 28, 1987.
Pittsburg Refrigeration Co., pro se.
Arthur B. Federman, Linde, Thompson, Fairchild, Langworthy, Kohn & Van Dyke, Kansas City, Mo., for respondent.
ORDER DENYING OBJECTION OF PITTSBURG REFRIGERATION CO. TO APPLICATION OF RESPONDENT CHAPTER 7 TRUSTEE TO PAY POSTCONVERSION EXPENSES OF ADMINISTRATION
DENNIS J. STEWART, Chief Judge.
On March 26, 1987, the respondent trustee in bankruptcy filed his application for leave of court to pay the following postconversion expenses of administration:

 Payee Amount
Diversified Ventures, Inc. $1,864.94
Betlin Manufacturing Company 895.89
Bull's Trophy House 79.19
Discus Athletic 566.28
Dunn & McCarthy, Inc. 38.20
Family Shoe Store, Inc. 2,441.48
Grid Sports 71.64
Molten America 752.76
Nasco Sporting Goods 21.39
New Era Cap Company 49.91
Nunn Bush Shoe Company 281.66
Paul Appling 74.85
Prince Manufacturing Co. 117.43
Richard Brothers 131.89
Judy Gerster 396.35

The court issued a notice on June 30, 1987, directing the creditors of the estate, or any of them, to show cause in writing within 20 days why the trustee's application should not be granted. Within the time for objection thus allotted, the objecting creditor, Pittsburg Refrigeration Co., filed a written objection to the following effect:
"Where's Pittsburg Refrigeration $102.67? We do [object]! unless we get paid also."
The court accordingly set a hearing on the objection for July 30, 1987, in Joplin, Missouri. At that hearing, only the trustee appeared, by counsel, Gary D. Barnes, Esquire. The objecting creditor did not appear.
It is necessary for the court, therefore, to base its ruling on the files and records before it. In this court's prior orders, this court has discussed the premier importance in the administration of this case of determining whether postconfirmation claims such as that asserted by Pittsburg Refrigeration Co.must be granted priority over other claims of other creditors or whether *867 they should be relegated to the status of general, unsecured prepetition claims. As has been observed previously in Federman v. Davison, 79 B.R. 859 (Bkrtcy.W.D.Mo. 1987): "[T]he court is now faced with the wholly unpalatable circumstances of having to choose which of two postpetition sets of creditorspreconversion or postconversion receive the miserable spoils which remain, with both sides having the facile ability to cite decisions of nearly equal logical force in their favor." Not to grant the postconversion claims priority would give notice to the world, not only that a supplier of goods or services might not safely do business with a chapter 11 debtor, but that the risk of nonpayment is exceedingly great. That appears to be why the authorities hold that chapter 11 debtors may not incur new long-term postpetition indebtedness without approval of the court.[1] Otherwise, the debts incurred in the ordinary course of business must be immediately paid. See Matter of Isis Foods, Inc., 19 B.R. 329, 330 (Bkrtcy.W.D. Mo.1982), affirmed 27 B.R. 156 (W.D.Mo. 1982):
"Thus, for the court initially to grant the chief executive officer this unqualified power to operate the business and the necessary power to make agreements to pay expenses as they currently arise and then, later, to refuse to enforce those agreements according to their clear and admitted terms would be fraud upon those who are encouraged under the aegis of the bankruptcy court to do business with a chapter 11 debtor. The proposition is too fundamental that the bankruptcy court should not and cannot make itself a party to such a fraud. And such would stultify the purpose and intent of the foregoing provisions of the modern bankruptcy law, which is to encourage the rehabilitation of an honest chapter 11 entity, rather than to permit that entity to victimize those who attempt to fulfill the purpose of rehabilitation by doing business with the chapter 11 debtor. If the agreement were not enforced, the word would rapidly go forth that no person might safely do business with a chapter 11 entity, regardless of the assurances given him by that entity, and all the rest of the provisions of that chapter would accordingly become an unusable dead letter."
To do as was permitted to be done in this case and convert the ordinary business debts into a stupendous sum of long-term debt is to defeat the purposes of reorganization, not only in the case at bar, but in chapter 11 cases generally. Nevertheless, once nonpayment has stretched past the date of conversion of chapter 11 proceedings to chapter 7, the law clearly provides for the relegation of post confirmation claims to the same status. See the prior order of this court in this case respecting the claim of BDH Rock of Monmouth, Illinois v. Federman, 79 B.R. 855 (Bkrtcy. W.D.Mo.1987), to the following effect:
"The debtors have, in substance, by running up a total of $800,000 in postpetition indebtedness, created a new class of creditors and have used the chapter 11 proceedings to hold off their prepetition *868 creditors while doing so. They abused the chapter 11 process, not only to frustrate its primary purposethe ultimate payment of prepetition creditorsbut also to enrich themselves to the extent that they received inventory without paying for it. It seems astonishing to this court, in retrospect, that responsible officers of any court would stand by and tolerate such an outrageous result gradually but certainly to be effected, as it was in this case. Yet, that was precisely what was done in this case. As this court has formerly found in making its findings of fact and conclusions of law in respect to the trustee's objection to discharge in Federman v. Davison, [73 B.R. 726] Adversary Action No. 86-0384-3 (Bkrtcy.W.D.Mo. March 12, 1987):
`Beginning with (August 3, 1983), the debtors failed to list the debts incurred and unpaid; . . . they thereafter continued to fail to list the evergrowing debts incurredinventory purchases, mostly, but also some sizeable obligations to relatives and others on account of loans which were extended to themuntil, at the time of conversion of the chapter 11, proceedings to chapter 7 proceedings on September 10, 1985, the incurred but unpaid indebtedness had reached a figure totaling in excess of $800,000. . . . [T]he debtors . . . had made disclosures [otherwise] in the monthly operating reports which should have plainly indicated that monthly purchases of inventory vastly exceeded monthly payments thereon . . . When the unpaid accounts payable were being incurred at a stupendous rate . . ., as they were in this case, it seems that even the most superficial attention to them would have resulted in the court's taking some appropriate action.'
This insidious process now leaves the court with the Hobson's choice of either further subdividing by one-sixth the distribution which would otherwise have been available to the creditors or else excluding either the prepetition creditors or postpetition creditors, one or the other, from any distribution at all in favor of paying all the funds on hand to the other class of creditors. And, it must be mentioned, counsel for the debtoras observed abovehave filed applications for awards of attorney's fees which would reduce by an additional $145,100.66 the amount which would otherwise be available for creditors.
"The trustee, in objecting to the claim of the creditor BDH, contends that the court must elect the first alternative abovementionedi.e., treat prepetition and postpetition claims on a parity and divide the estate pro rata among them. The trustee reasons that the debts incurred after the date of conversion cannot be treated as expenses of estate administration pursuant to § 503(b) of the Bankruptcy Code becauseunless the plan or order of confirmation provides otherwisethe estate, under § 1141(c) of the Bankruptcy Code, ceases to exist as of the date of confirmation. And, under § 348 of the Bankruptcy Code, such nonadministrative expense debts as are incurred by a chapter 11 debtor between the petition for relief and the order of conversion are to be treated as ordinary prepetition claims. An unbroken claim of authority, arising from both bankruptcy courts and district courts, requires this result."
In BDH Rock of Monmouth, Illinois, supra, the claimant was successful in bringing itself within an exception to that general rule by demonstrating that the bankruptcy court had entered an explicit order requiring that the claimant be paid on delivery or otherwise.[2] The objecting creditor in this case, although granted an evidentiary opportunity in this regard, has not brought itself within that exception. Therefore, in accordance with § 348 of the Bankruptcy Code,[3] its claim must be treated *869 as a general unsecured prepetition claim and thus the postconversion administrative expense claims sought to be paid by the trustee take priority over it. It is therefore
ORDERED that the objection of Pittsburg Refrigeration Co. to the application of the respondent chapter 7 trustee to pay to the postconversion expenses of administration be, and it is hereby, denied.
NOTES
[1] "The law is undisputed that a debtor cannot borrow money without authority. Indeed, one lending money to a corporate debtor in corporate reorganization proceeding acts at his peril . . . and must examine and satisfy himself of sufficiency of debtor's or receiver's authority to borrow money. . . . To approve such unauthorized loans at this late date, occurring as they did, without following the delineated requisites of notice and court approval, would set a dangerous precedent for future reorganization proceedings, imperiling the vested interest of creditors and shareholders." In re Industrial Machine & Supply Co., 112 F.Supp. 261, 262 (W.D. Pa.1953). "Where the borrowing is out of the ordinary course of business and prior court authorization is not obtained the lender may be relegated to the status of a general unsecured creditor. Due to the severe consequences arising from misconceptions concerning whether a credit extension is in the ordinary course of business or not, lenders will be well advised to err on the side of caution where there is any doubt." 2 Collier on Bankruptcy para. 364.03, p. 364-8 (15th ed. 1987). "It is the opinion of this Court, despite the language cited from the 15th edition of Collier on Bankruptcy, this is an incorrect statement of the law and that one who lends money to a debtor in possession without prior approval of the Court is not even entitled to the status of a general unsecured claim." Matter of Alafia Land Development Corp., 40 B.R. 1, 5 (Bkrtcy.M.D.Fla.1984).
[2] See note 1, supra.
[3] "A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arise immediately before the date of the filing of the petition." Section 348(d) of the Bankruptcy Code.