In re PAULING AUTO SUPPLY, INC., Debtor.

**Bankruptcy No. L86–00616W.**

United States Bankruptcy Court, N.D. Iowa.

Aug. 16, 1993.

Don E. Gottschalk, Cedar Falls, IA, for debtor.

Michael C. Dunbar, Waterloo, IA, trustee.

Julie Johnson McLean, Des Moines, IA, for Auto Parts Warehouse of Des Moines, Inc.

## ORDER RE: OBJECTION TO TRUSTEE'S FINAL REPORT

WILLIAM L. EDMONDS, Chief Judge.

Auto Parts Warehouse of Des Moines, Inc. (WAREHOUSE) objected to the trustee's Final Report and Account. Hearing was held May 5, 1993, in Cedar Rapids. At the hearing, counsel for Warehouse and Michael C. Dunbar, the trustee (TRUSTEE), argued the merits of the objection and agreed to file a subsequent stipulation of facts. The stipulation was filed May 20, 1993. Warehouse has filed a Memorandum of Authorities; the trustee has not.

### Findings

Adopting the stipulation of the parties, the court finds the following facts:

1. On March 23, 1986, the Debtor filed a Chapter 11 Petition and continued to operate its business as an auto parts jobber with stores located in Allison and in Cedar Falls, Iowa.

2. During the pendency of the Chapter 11 proceeding, the Debtor continued to sell auto parts on a wholesale basis to dealers and repair shops. In addition, the Debtor continued to sell auto parts and conduct repair work on a retail basis.

3. During the pendency of the Chapter 11 proceeding, Auto Parts supplied auto parts and related equipment to the Debtor at wholesale on open account.

4. Auto Parts was the only supplier of auto parts and related equipment to the Debtor on open account during the Chapter 11 proceeding on a regular basis.

5. Auto Parts' supply of such auto parts and related equipment was necessary in order for the Debtor to continue to carry on its business after the commencement of the Chapter 11 case.

6. The auto parts and related equipment supplied by Auto Parts were either sold by the Debtor to its customers or, alternatively, used by the Debtor in its repair business.

7. On March 23, 1989, the Debtor owed Auto Parts the sum of $4,777.51 for goods supplied to the Debtor on open account during the Chapter 11 proceeding. * * * (The parties' reference to Exhibit A is omitted.)

8. On March 23, 1989, the Debtor's Amended Plan of Reorganization (the "Plan") was confirmed.

a. The Plan provided that all administrative expenses and other claims entitled to priority under the Bankruptcy Code "be paid in cash and in full within sixty days of when their claims are allowed and ordered paid by the Court." Article II of the Plan.

b. Article VI of the Plan provided that the Court will retain jurisdiction for certain purposes including "the classification of the claim of any creditor ... and the determination of such objections as may be filed to creditor's claims." Article VI.1. of the Plan.

c. Article VI also provided that the Court will retain jurisdiction to determine "all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation...." Article VI.2. of the Plan.

9. On April 25, 1990, the Debtor owed Auto Parts the sum of $10,030.92 for goods supplied to the Debtor on open account during the Chapter 11 proceeding. * * * (The parties' reference to Exhibit B is omitted.)

10. On April 27, 1990, the Debtor converted its Chapter 11 case to a case proceeding under Chapter 7 of the Bankruptcy Code.

**792**

11. On or about April 28, 1990, the Debtor ceased doing all business and locked its doors.

12. On or about December 6, 1990, Auto Parts filed a priority claim as an administrative expense pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(1) in the amount of $10,030.92 for auto parts and equipment supplied to the Debtor during the Chapter 11 case.

13. On or about December 6, 1990, Auto Parts filed a Request for Payment of Administrative Expense wherein Auto Parts requested payment of its $10,-030.92 priority claim as an administrative expense pursuant to 11 U.S.C. § 503(a).

14. On February 15, 1991, Chief Bankruptcy Judge Michael J. Melloy filed an Order allowing Auto Parts' claim of $10,030.92 for advances made to the Debtor during the pendency of the Chapter 11 case. The Court reserved the issue of the classification of the allowed claim as an administrative expense until such time as the Trustee files a final report and the funds available for payment to creditors are determined.

15. Auto Parts' allowed claim of $10,-030.92 relates to goods supplied to the Debtor on open account during the Chapter 11 proceeding, and such amount remains unpaid.

16. On March 3, 1993, the Trustee filed the Final Report and Account Before Distribution. The Final Report states: total receipts were $28,078.42; total disbursements were $7,436.60; and the balance on hand for distribution is $20,641.82. The Trustee proposes that final distribution be made as follows: $9,182.20 for payment of allowed or allowable administrative expenses; $11,-459.62 for payment on allowed priority claims which total $33,318.51; and no payment on general unsecured claims.

17. The Trustee's Proposed Distribution, attached as Exhibit "B" to the Notice of Bar Date, states that Auto Parts' allowed claim should be disallowed as a Chapter 11 expense, and proposes payment to the following claimants:

| Claimant | No. | Claim Amt Filed/ Amt Allowed | Dividend | % | Comments |
|---|---|---|---|---|---|
| I.R.S. | 22 | $ 7,283.62 7,283.62 | $7,283.62 | 100.00 | Allow as Ch. 11 Adm. Exp. § 507(a)(7) |
| Johnny Gut-knecht | 33 | $ 1,290.00 860.00 | $ 860.00 | 100.00 | Allow $860.00 § 507(a)(3), Allow balance unsecured |
| I.R.S. | 13 | $12,950.84 12,950.84 | $4,229.22 | 32.66 | Allow as Ch. 11 Adm. Exp. § 507(a)(7) |
| IA. Dept. Rev. | 16 | $ 252.58 252.58 | $ 82.49 | | Allow as priority § 507(a)(7) |
| IA. Dept. Rev. | 17 | $ 460.86 460.86 | $ 150.50 | | Allow as priority § 507(a)(7) |
| IA. Dept. Rev. | 18 | $ 2,514.78 2,514.78 | $ 821.22 | | Allow as priority § 507(a)(7) |
| IA. Dept. Rev. | 23 | $12,009.23 12,009.23 | $3,921.72 | | Allow as priority § 507(a)(7) |
| IA. Dept. Rev. | 28 | $ 3,276.39 3,276.39 | $1,069.93 | | Allow as priority § 507(a)(7) |
| IA. Dept. Rev. | 29 | $ 993.83 993.83 | $ 324.54 | | Allow as priority § 507(a)(7) |

18. Pursuant to 11 U.S.C. § 348(d), an administrative expense claim under § 503(b) incurred during the pendency of a Chapter 11 proceeding retains its character as an administrative expense claim after the conversion of the case to Chapter 7.

19. Administrative expense claims incurred after the conversion to Chapter 7 are prior to administrative expense claims incurred during the pendency of the Chapter 11 proceeding. Accordingly, Auto Parts agrees with the Trustee's proposed distribution of $1,898.58 for the following Chapter 7 administrative expense claims:

a. Claims of the Trustee in the amount of $1,235.33;

b. Claims of the attorney for the Trustee in the amount of $500.00; and

c. Reimbursement of clerk and other court costs in the amount of $163.25.

20. Administrative expense claims allowed under § 503(b) incurred during the pendency of the Chapter 11 proceeding retain their respective priority in the order of payment of claims by the Trustee after payment of Chapter 7 administrative expense claims.

21. The Chapter 7 estate incurred no tax obligations.

### Discussion

Warehouse objects to the trustee's report in that it recommends disallowance of (objects to) Warehouse's request for priority treatment as a chapter 11 administrative claim.[1] Warehouse contends that it is entitled to such treatment for the full amount of its claim of $10,030.92. Two issues are presented to the court. The first issue is whether Warehouse's claim arising from the sales of goods to the debtor after confirmation and prior to conversion is entitled to treatment as an administrative claim arising in the chapter 11 case. The second issue is whether Warehouse's claim for like sales after the filing of the chapter 11 petition but prior to confirmation should be given administrative status.

Administrative expenses include "the actual, necessary costs and expenses of preserving the estate...." 11 U.S.C. § 503(b)(1)(A). Not all post-petition expenses are entitled to administrative status. *In re Glover, Inc.*, 43 B.R. 322, 325 (Bankr.D.N.M.1984). To be accorded administrative status, the expense must be actual and necessary; it must arise from a transaction with the debtor-in-possession; it must benefit the debtor in its business operation. *White Front Feed & Seed, Division of Paul Lammers & Sons, Inc. v. State National Bank of Platteville (In re Ramaker)*, 117 B.R. 959, 962 (Bankr. N.D.Iowa 1990); *In re J.A.V. Ag., Inc.*, 154 B.R. 923, 929 (Bankr.W.D.Tex.1993). According to the statute, the costs and expenses must "preserve the estate."

After confirmation, Warehouse sold the debtor $5,253.41 worth of parts and equipment. Although the trustee does not deny the sales were made, he contends that the Warehouse claim for this amount cannot be given administrative status because after confirmation of the plan, there was no estate to preserve.

The termination of the "estate" is a consequence of confirmation of a chapter 11 plan. When a debtor commences its case by the filing of a petition, including a chapter 11 petition, an estate is created. 11 U.S.C. § 541(a). Confirmation of a debtor's plan vests all property of the estate in the reorganized debtor, unless the plan or the order of confirmation provides otherwise. 11 U.S.C. § 1141(b). The estate ceases to exist. *In re T.S.P. Industries, Inc.*, 117 B.R. 375, 377 (Bankr.N.D.Ill. 1990); *Security Bank of Marshalltown v.*

---

1. Warehouse noted in its objection that the priority claims of certain creditors were being allowed and paid without proper showing. Warehouse did not pursue these issues in its argument.

*Neiman,* 1 F.3d 687, 689 (8th Cir.1993) (dictum).

■ Inasmuch as there is no estate, a post-confirmation creditor is unable to obtain administrative status for a post-confirmation claim because there is no estate to preserve. *In re Tri–L Corp.,* 65 B.R. 774, 777 (Bankr.D.Utah 1986). If the claim is not entitled to such status, and if conversion to chapter 7 occurs after confirmation, the claim would be treated as a pre-petition claim. 11 U.S.C. § 348(d). Thus, unless Warehouse can show that the plan provided for the continued existence of the estate, it would not be entitled to administrative status for its post-confirmation claim.

■ Warehouse contends that the plan does so provide. Article VI.2 of the plan states that the court will retain jurisdiction to determine "all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation...." Stipulation of Facts, paragraph 8(c). A very similar plan provision was relied upon by the Bankruptcy Court in the Western District of Missouri in concluding that the existence of the estate continued, and, therefore, a post-confirmation creditor was entitled to administrative status for its claim. *BDH Rock of Monmouth v. Federman (Matter of Davison),* 79 B.R. 855, 859 (Bankr. W.D.Mo.1987). The court found that the plan's provision for the court's retention of jurisdiction to determine disputes respecting property of the "estate" was an unequivocal indication of the debtor's intent that the estate continue in existence. *Id.* at 859.

Similarly, Warehouse argues that the plan's grant of post-confirmation jurisdiction under Article VI.2 by implication provides that the estate will continue to exist after confirmation. Such a reading gives the plan more credit and substance than it deserves.

■ Although the bankruptcy court does have post-confirmation jurisdiction in a chapter 11 case, that jurisdiction is not without limit. The court does not retain jurisdiction over every aspect of the reorganized debtor's affairs. *In re Tri–L Corp.,* 65 B.R. 774, 779 (Bankr.D.Utah 1986). The Code provides several areas where the court retains jurisdiction. Some of these are the authority of the court to order acts necessary to the consummation of the plan under 11 U.S.C. § 1142(b) and the authority to dismiss or convert a case after a plan has been confirmed, 11 U.S.C. § 1112(b)(7), (8) and (9). It is reasonable to infer that the court also has post-confirmation jurisdiction to decide claims issues and transaction avoidance issues. Section 105 may also provide some basis for continued jurisdiction. After confirmation, the court must look first to the Code to determine if there is any basis for taking jurisdiction of the dispute presented. The parties under the plan can agree to areas of jurisdictional retention, but they should not be able to give the court jurisdiction where the statute provides no basis for it; nor may they deprive the court of its jurisdiction. Any agreement as to post-confirmation jurisdiction should be based upon a reasonable construction of the Code's grants of jurisdiction. The parties may not expand the court's jurisdiction beyond its legal boundaries merely by plan provision. It is a difficult task to determine the boundaries of the court's post-confirmation jurisdiction, and the court need not do so in this case.

■ The jurisdictional grant of Article VI.2 of the plan provides for the court's determination of "all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation." The argument that the authority to determine disputes over title to assets of the estate implies the continued existence of the estate, looks at the issue backwards. The court must first ask whether the debtor provided for the continuation of the estate after confirmation. It did not. To provide for the continuation of the estate, a plan proponent need only state that "property of

the estate will not vest in the reorganized debtor upon confirmation of the plan, but the property of the estate will vest in the reorganized debtor on or when...." Absent an express plan provision postponing the revesting, the court will not imply it from vague and ambiguous provisions of the plan. As the plan proponent failed to provide that the property of the estate would not revest in the debtor upon confirmation, revesting took place and the estate ceased to exist. There being no estate, the plan's provision for the court's retained jurisdiction may have been narrower in scope than the debtor thought. However, any failed expectation in that regard is not a ground for the court's curing the debtor's failure to provide for the continuance of the estate.

As Warehouse's sales to the reorganized debtor were not necessary to preserve an existing estate, Warehouse is not entitled to administrative status of its post-confirmation claim for $5,253.41. That claim must be treated as an unsecured, pre-petition claim.

██ Warehouse's claim for $4,777.51 arising out of post-petition, pre-confirmation sales to the debtor-in-possession also presents some difficulty. The trustee collected $28,078.42 after his appointment, and he presently has $20,641.82 on hand for distribution. All parties-in-interest apparently presume this is property of the debtor's chapter 7 estate. But how did it get to be so? If the estate terminated on confirmation of the plan, what provision reconstitutes the estate upon post-confirmation conversion to chapter 7? The court can find no provision which would do so. Sections 348, 541 and 1112 make no mention of the creation of an estate upon conversion. Under § 541 of the Bankruptcy Code, an estate is created upon commencement of the case. 11 U.S.C. § 541(a). The conversion of a case from chapter 11 to chapter 7 does not change the date of commencement of the case. 11 U.S.C. § 348(a). The date of conversion does not control in determining property of the estate. *Koch v. Myrvold,* 784 F.2d 862, 863 (8th Cir. 1986). "Once property has vested in the

Debtor, conversion will not revest that property in the estate." *In re T.S.P., Industries, Inc.,* 117 B.R. 375, 378 (Bankr. N.D.Ill.1990).

██ A great disadvantage of post-confirmation conversions may be that there is no estate subject to distribution by the chapter 7 trustee. It appears from the trustee's final report that the sources of funds in the trustee's possession are sales of inventory, collection of accounts receivable, liquidation of a pre-conversion bank account, and interest on the bank deposit of these receipts. Final Report, "Estate Cash Receipts and Disbursement Record." These appear to be assets of the reorganized debtor turned over to the trustee by the debtor or others on the presumption that they were assets of the chapter 7 estate. However, the court can find no law to support the presumption. As the trustee is correct in his argument that Warehouse does not have an administrative claim because there was no post-confirmation estate to preserve, he now puts himself in the position of having no estate assets himself. If there are no assets in the chapter 7 estate, there is nothing to distribute to any claimant, including to Warehouse. No party, including the debtor, has raised the issue of the trustee's right to the money in his possession or his authority to distribute it among the claimants. To rule now that there are no assets and to require the return of the money to the debtor would, in the court's view, be unfair to all those who have filed claims in reliance on this common assumption. Therefore, the court will recognize the estate as the parties have done. To the extent that Warehouse would be entitled to any chapter 11 administrative claim, it will receive payment from the assets being held by the trustee as part of the estate.

██ The court concludes that Warehouse's claim of $4,777.51 which arose after the chapter 11 filing and prior to March 23, 1989 should be allowed as a chapter 11 administrative claim. The claim arose from transactions with the debtor-in-possession. The sale to it of parts and equipment enabled the debtor to continue its

business during the pendency of reorganization and to obtain confirmation of a plan. The sales were beneficial to the debtor. The expense was actual and necessary to the preservation of the chapter 11 estate. The claim should have priority as an administrative claim pursuant to 11 U.S.C. §§ 507(a)(1) and 503(b)(1)(A). The claim shall be paid after all chapter 7 administrative expenses as provided in 11 U.S.C. §§ 726(a)(1) and 726(b).

## ORDER

IT IS ORDERED that the objection of Auto Parts Warehouse of Des Moines, Inc. to the trustee's Final Report and Account is sustained in part and overruled in part as follows:

Auto Parts Warehouse of Des Moines, Inc. is allowed an administrative claim in the amount of $4,777.51 which claim shall be paid by the trustee after payment of all chapter 7 administrative claims.

The claim of Auto Parts Warehouse of Des Moines, Inc. for an administrative allowance in the amount of $5,253.41 is denied. This portion of the claim shall be treated as a pre-petition, unsecured claim.

IT IS FURTHER ORDERED that the trustee shall amend his final report accordingly and submit it to the court for approval. The trustee shall serve a copy of the amended report on the U.S. Trustee and upon counsel for Auto Parts Warehouse of Des Moines, Inc. Judgment shall enter accordingly.

SO ORDERED.